### WHITEHEAD v. MONTGOMERY.
### No. 2895.

Court of Civil Appeals of Texas. Waco.
March 23, 1950.

Rehearing Denied April 6, 1950.

John Touchstone, Dallas, George C. Cochran, Dallas, for appellant.

Burt Barr, Dallas, Earl R. Parker, Dallas, for appellee.

TIREY, Justice.

Plaintiff brought this suit to recover damages resulting to one of his trucks. On trial (non-jury) the court found in favor of the plaintiff and awarded damages to him in the sum of $400.00 and defendant has perfected his appeal. There was no request for findings of fact and conclusions of law and none were filed.

Points 1, 2, 3 and 4 assail the judgment of the trial court substantially on the ground (1) that here is no evidence of negligence and proximate cause; (2) that if there is such evidence, it is wholly insufficient; (3) that the court did not dispose of the case on the theory that defendant was only responsible for negligence and proximate cause attributable to him; and (4) there is no basis for the trial court to enter judgment upon the theory of liability for breach of contract.

Testimony was tendered to the effect that the truck was owned by the plaintiff; that he had a driver for it, and at the time in question it was loaded with hot asphalt. One afternoon the driver called plaintiff and advised him that he had had a breakdown and he and one of his mechanics went to the scene of the accident and took with them some big hydraulic jacks; that they tried to raise the truck into a position to put on one of the rear wheels that had come off, but were unable to do so; that the truck was near the Union Terminal Station in Dallas and a policeman came to plaintiff and asked him to move the truck as soon as he could; that he called defendant and defendant came down and looked at the truck and undertook to lift it up with one of his wreckers so that he could put the wheel on but that he could not do so because the brake shoe and back flange were torn up "so bad that he could not get it on"; that plaintiff then said to defendant, "Is there any way we could get it over to my shop" and defendant said, "We can put two wreckers on it; one to hold it down and one to move it" and "I said, 'do you think you can move it?'" and then defendant said, "I know we can if you will let us do it."

Defendant testified to the effect that when he first tried to pick up the truck it was loaded so heavily it kicked the front end of the wrecker off of the ground; that he then tried to put the wheel back on so he could tow it from the front but was unable to do so, "so I called for another wrecker * * to utilize the weight of the second wrecker

to hold my front wheels on the ground * * * to tie it on to the front end so we could move it. * * * We got it hooked up and we moved from in front of the Union Terminal down to Commerce and Houston (streets) * * * I was pushing the front wrecker * * * I started to make this turn and the chain snapped * * * It turned the truck over on the side; spilled the load over on the pavement. * * *

"Q. Which one of them broke as you made this turn right down here? A. It was the chain on the right hand side broke. * * *

"Q. That is what turned it over? A. It allowed that side to drop down and consequently the truck tipped over. * * *

"Q. Now then, at the time you first picked the truck up, did you have any conversation with Mr. Montgomery? A. Yes, sir.

"Q. Do you remember the conversation, Herbert? A. No, I just told him what I had to do in order to move the truck and he said, well, he would like to get it moved over there because he had this hot asphalt on there and if it is allowed to set too long it would get set up, as I understand it; it would get too hard to do anything with. * * *

"Q. Did he also tell you that he had to get the truck out of the traffic way down there? A. Well, I don't know. That was the general understanding though, because we knew the five o'clock rush was coming on.

"Q. When you told him one truck wouldn't handle it, what did he tell you when you told him you would have to have two? A. Anything to get them; that I knew what to do."

Plaintiff testified in part to the effect that he had not had any experience in moving trucks that were broken down; that he had watched them being moved; that he was present when Mr. Whitehead used the two wreckers to get his truck off of the ground so that it could be moved.

"Q. Was there anything that you noticed that he did that he shouldn't have done? A. No, sir, I sure didn't.

"Q. As far as you know he was just as careful as he could be? A. The only thing I noticed he done he shouldn't have done and that was when he put the cable around the frame and lifted and twisted it without having the load in it. That's when he twisted the frame and broke those cross members.

"Q. That is the only thing you noticed. A. Yes, sir, that's the only thing I noticed that he done wrong.

"Q. You don't blame him for this truck turning over, do you? A. No, sir."

Plaintiff further testified to the effect that when the defendant got the truck to his shop "it had the main leaves on the rear springs and both mains springs were broken and the drive shaft casing. The rear end housing was sprung. The transmission casing was broken and the bell housing was broken. The frame was twisted. The cowl broke loose from the cab. The dump body was all caved in and the boards all broke off of it. And the cross members were pulled loose from the frame."

Plaintiff testified that after defendant had hoisted the truck and was in a position to move it that he got in his car and proceeded on his way to his shop but when he failed to see that they were trailing him, he turned around and went back and found that one of the chains holding up the truck had broken and that it had turned over and fallen to the ground, thereby causing the alleged damage to his truck.

Plaintiff in his pleadings pertinent to this discussion alleged that he made a verbal contract with the defendant to use such means and equipment as might be necessary to move the truck from the point where it had broken down to his place of business and agreed to pay defendant's price for such service. He further specifically alleged: "That when said defendant delivered said truck to the plaintiff's place of business that same was a complete wreck; that it had been severely damaged due to the negligence of the defendant in a manner well known to the defendant but unknown to plaintiff, because defendant had exclusive control of the manner and operation for removing said truck and plaintiff was not

present. Plaintiff relies upon the doctrine of res ipsa loquitur." Plaintiff relies solely on the foregoing allegation for his relief.

The defendant entered general denial and specially pleaded that plaintiff was not entitled to plead and invoke the rule of res ipsa loquitur, and specially pleaded that plaintiff knew all the facts with reference to the manner and circumstances under which the truck turned over, and that defendant undertook to transport the heavily laden truck in a reasonable and prudent manner, and that the defendant did exercise ordinary care and prudence in his attempt to move the truck, and that he had no means of knowing that the chain which was used to hoist the truck was going to break and that if there was any negligence on such occasion it was caused by plaintiff and his agent not informing defendant of the correct weight of the truck loaded with asphalt; that such failure was negligence on the part of plaintiff and his agent and employee and that such negligence was either the proximate cause, or, in the alternative the proximate contributing cause, of the accident, and by reason of such facts the defendant was not liable for the alleged damage. Defendant further specially pleaded that he was guilty of no negligence whatsoever in the means and manner he used to move the truck and that the accident was an unavoidable accident insofar as he was concerned.

Much has been written on the doctrine of res ipsa loquitur. Our view is that the case of Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 666, op. by Com.Apps., adopted by S.Ct., set at rest this doctrine insofar as it is applicable to cases arising in Texas. See Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445, Com.Apps., op. adopted by S.Ct. In the Elliott case we find this statement: "The rule being one of evidence, there is no reason logically for restricting its application to cases in which general negligence is alleged a practical difficulty is found in the fact that the terms 'general' and 'specific' are relative, and obviously could not serve as an invariable test of applicability. There is nothing inherent in the res ipsa loquitur formula, 'the thing speaks for itself,' that makes it applicable to the one type of allegation and not the other. In this case it does not speak negligence directly, but defectiveness. The certificate shows the related issues of negligence and proximate cause were submitted. The degree of generality of allegation becomes immaterial except as to fixing the scope of the burden of plaintiff and the scope of the field of testimony in rebuttal of plaintiff's prima facie case. As stated in 45 C.J. p. 1225: 'Where the presumption arising by virtue of the doctrine of res ipsa loquitur is of negligence generally, as under a general allegation of negligence, the application of the doctrine requires defendant to rebut or overcome the inference that the injury complained of was due to any negligent act for which he is chargeable; however, where the scope of the presumption is limited by specific allegations of negligence, defendant's burden is merely that of showing that he was not negligent in respect of that particular with which he is charged.' "

In this opinion Mr. Justice Taylor cites the case of Galveston, H. & S. A. R. Co. v. Brewer, Tex.Civ.App., 4 S.W.2d 320, 323, writ ref. date of op. January 27, 1928, in which the basis of the negligence alleged was a defective hoisting machine. We have carefully read this opinion and we think the plaintiff's pleading on which he went to trial in the foregoing case specifically pleaded and invoked the rule of common law negligence, as that term is usually employed in negligence cases, and the judgment of the lower court was affirmed on the theory that common law negligence had been pleaded and proved and not upon the doctrine of res ipsa loquitur. In this opinion we find this statement:

"Appellant's claim that the amendment set up a new cause of action is predicated upon the theory that by the amendment plaintiff invoked the doctrine, 'res ipsa loquitur,' and that such doctrine could not have been supplied upon the allegations of the former pleading.

"We are not prepared to hold that the doctrine could not have been invoked under the superseded *pleading if the evidence had failed to show the specific cause of the fall*

*of the timber*. But if appellant's contention, that the rule could not have been applied under the pleadings amended, is sound, the cause of action pleaded in the amendment would not be a new one, though a smaller quantum of proof would be required of plaintiff in establishing his allegations of negligence. It may be that such a change in a petition would so surprise a defendant as to entitle him to a continuance of the case. *This question, however, has been eliminated from the case by the evidence adduced upon the trial.*

"The undisputed evidence shows that in hoisting the stringer, the ring to which the chains attached to the grappling hooks used by appellee were fastened slipped off of the large hook on the end of the pulley chain and this caused the timber to fall. *The immediate cause of the accident being thus shown, there was no room for the application of the res ipsa loquitur rule;* the only issues for the jury (aside from that of contributory negligence) being whether appellant was negligent in using this method of fastening the grappling hook chains to the pulley chain, and whether such negligence was the proximate cause of the injury.

  \*  \*  \*  \*  \*  \*

"Presumptions or inferences cannot be indulged against proven facts; both give way when facts appear. *When the evidence disclosed that the ring to which the grappling hook chains were attached slipped off the large hook at the end of the pully chain upon which it was placed, and this caused the timber to fall, no inference of any other cause of the injury was presumable and the rule of res ipsa loquitur could have no application.*"

This holding by our Texas courts is substantially the same rule as found in 38 Amer. Jur. sec. 303, p. 999.

■ Our view is that the foregoing quotation is pertinent and applicable to the case at bar and that the trial court's judgment cannot be sustained on the theory of res ipsa loquitur. Here the evidence is without dispute that all the facts and circumstances relating to the falling of the truck while it was being moved are in evidence. It is without dispute that one of the chains that was being used to hold the truck up and in place so that it could be moved snapped and that this caused the truck to fall to the pavement. There is no contention that the truck was damaged while being moved by defendant other than the damage it received when the chain snapped. Such being the undisputed facts no inference of any other cause for the injury was presumable and the rule of res ipsa loquitur could have no application here. Since plaintiff relied solely on the doctrine of res ipsa loquitur, our view is that his judgment has no support in the pleadings and it follows that the cause must be reversed.

■ Since we are of the opinion that plaintiff should be allowed to amend his pleadings, and since we are further of the opinion that the case has not been fully developed on trial, Lanford v. Smith, 128 Tex. 373, 99 S.W.2d 593, we think that the equities require that the cause be reversed and remanded in order that justice may be done between the parties. It necessarily follows that because of the views here expressed, further discussion of the points raised by appellant would be of no avail, and they may not arise on another trial.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.