**TRIO TRANSPORT, INC., Appellant,**

v.

**A. J. HENDERSON, Appellee.**

**No. 7689.**

Court of Civil Appeals of Texas.

Amarillo.

March 6, 1967.

Rehearing Denied April 3, 1967.

Albert Smith, Lubbock, for appellant.

Richard C. Milstead, Big Spring, and Calvin W. Wesch, Kermit, for appellee.

NORTHCUTT, Justice.

This is a personal injury suit brought by A. J. Henderson, as plaintiff, against Trio Transport, Inc., as defendant, to recover damages based upon the theory he was damaged by the negligence of the defendant. On September 10, 1962, the plaintiff was employed by St. John Drilling Company as a driller on an oil and drilling rig. On such date the drilling company had completed the drilling of the well and desired to move the drilling rig to another location. St. John Drilling Company employed Henderson and his crew to let down the derrick and get it ready to be loaded and Trio Transport, Inc. was hired to do the actual loading and hauling of the derrick to the new location. While the derrick was being loaded it fell and injured plaintiff.

The case was submitted to a jury upon special issues. In answer to the issues the jury found that the winch and truck in question were under the exclusive control and management of the defendant; that the falling of the derrick in question was due to the negligence of the defendant; that such negligence was a proximate cause of the falling of the derrick; that the defendant did not fail to have the derrick properly supported; that Melvin Terry (defendant's employee in charge of truck and winch) did not fail to properly engage the winch clutch in gear; that Melvin Terry failed to determine if the winch clutch was properly engaged after he threw the toggle switch; that such failure was negligence and that such negligence was a proximate cause of the falling of the derrick; that Melvin Terry did not fail to properly adjust the automatic brakes on the winch so as to prevent the bottom section of the derrick from falling; that Mr. Eaton (employee of defendant) was in charge of loading the derrick on the occasion in question; that Eaton told Henderson not to get under the derrick on the occasion in question; the jury was then asked if they found that Henderson went under the derrick after being told by Mr. Eaton not

to go under it and the jury answered, "No"; that same was not negligence nor a proximate cause of his injuries; that there was a danger that the derrick section might fall when Henderson went under the derrick to clear the lines; that Henderson did not know or appreciate the danger that the derrick section might fall; that Henderson voluntarily exposed himself to the risk when he went under the derrick to clear the lines; and that the falling of the derrick was not an unavoidable accident. The remaining issues concern amount of damages. Upon the verdict of the jury the trial court rendered judgment for the plaintiff. From that judgment the defendant perfected this appeal. The parties will hereafter be referred to as they were in the trial court.

The derrick was divided into three sections and designated as "top section," "middle section" and "bottom section." The top and middle sections had been loaded, ready to be hauled. The bottom section, weighing several thousand pounds, was to be raised high enough so that the said second section could be backed under the bottom section. The bottom section had been raised to a sufficient height for the second section to back under it and while in that position, the plaintiff ran under the bottom section to untangle some lines and the section fell, injuring the plaintiff.

The plaintiff first pleaded ten separate acts of negligence which he contended defendant was guilty of as being a proximate cause of plaintiff's damages, then pleaded in the alternative that the plaintiff was entitled to rely on the doctrine of res ipsa loquitur. Plaintiff alleged the defendant was negligent in failing to keep a proper lookout for the safety of the plaintiff; in failing to have the derrick it was moving properly supported; in having a defective clutch on its truck; in failing to properly engage the winch clutch in gear; in failing to check to see and determine if such winch clutch was properly engaged before using said winch to lift the bottom section of the derrick; in throwing the switch or

lever on the winch clutch while the derrick was suspended in the air thus disengaging said winch clutch while the plaintiff was under the derrick; in disengaging the gear on the winch while said derrick was suspended in the air; in operating the truck with a defective winch clutch when it knew or by the exercise of ordinary care should have known of its defective condition; in failing to properly set the brakes on the winch so as to prevent the bottom section of the derrick from falling rapidly to the ground; and in operating said winch with defective brakes.

The plaintiff testified it was his job to get the derrick ready to be loaded but that defendant did the actual loading and hauling off and that he, the plaintiff, had nothing to do with the loading and hauling off. Plaintiff further testified that it was his job to tie off the lines inside of the derrick after it was loaded and you could not tie the lines up before the bottom section was loaded on the middle section. It was Trio Transport, Inc.'s job to load and transport the derrick. Terry and Eaton were the employees of defendant. Eaton was in charge of the loading of the derrick. After the bottom section was raised into the air the long line fouled and the plaintiff, an employee of the owner of the derrick, immediately ran under the bottom section to keep the lines from being cut or snagged, but the line would not have kept the derrick from being loaded. It was while the plaintiff was under this section of the derrick that it fell and injured the plaintiff.

The only evidence in this record as to what caused the derrick to fall is that the dogs on the clutch on the winch kicked out. Eaton was asked by the plaintiff's attorney, "Tell me what you think happened." Eaton's reply was that he knew what happened but he didn't know what caused it. Then he testified the dogs kicked out. There was other evidence to the effect showing that the clutch had dogged out. Under the finding of the jury there were only two theories upon which a judgment could be based in favor

of the plaintiff. The first three findings were based upon the rule of res ipsa loquitur. In answer to the first issue the jury found that the winch and truck were under the exclusive control and management of the defendant. That is not a disputed issue, as defendant's own evidence admitted that to be correct. In answer to Issue 2 the jury found the falling of the derrick was due to the negligence of the defendant, its agents or employees and, third, that such negligence was a proximate cause of the falling of the derrick.

After the plaintiff had rested the defendant filed a motion for an instructed verdict based upon the fact that res ipsa loquitur had gone out of the case and that there was no evidence of sufficient probative force to justify the submission of any issue relating to specific acts of negligence. A like motion was presented when both parties announced that they had closed. Both motions were overruled.

By defendant's fifth point of error it is contended that the court erred in refusing to disregard the jury's findings in Special Issues Nos. 2, 3, 10, 11 and 12 and to enter a judgment for the defendant because there was no evidence that the defendant was negligent or that his negligence was a proximate cause of plaintiff's injuries.

The only other issues other than under the rule of res ipsa loquitur that were found in favor of the plaintiff were Issues 10, 11 and 12. In answer to these issues the jury found that Terry failed to determine if the winch clutch was properly engaged after he threw the toggle switch, if he did; that such was negligence and was a proximate cause of the falling of the derrick. The jury found further that it was not an unavoidable accident.

We must first consider whether the rule of res ipsa loquitur is applicable to the facts herein. There are many cases discussing that rule but few are of value

here as each case must be determined on its own peculiar facts. The doctrine of res ipsa loquitur, meaning the thing speaks for itself, is a qualification of the general rule that negligence is not to be presumed but must be affirmatively proved. It is stated in the case of Longoria v. Violet Gin Company, 309 S.W.2d 484, (Tex.Civ. App.—San Antonio, 1958, writ ref'd n. r. e.) as follows:

"The evidence was insufficient to invoke the doctrine of res ipsa loquitur, in that it fails to show that the injury could only have occurred by the negligence of Jerome Jalufka or one of his agent, employees or servants. McClish v. R. C. Young Feed & Seed Co., Tex. Civ.App., 225 S.W.2d 910; Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791; Comet Motor Freight Lines v. Holmes, Tex.Civ.App., 175 S.W.2d 464; Montgomery Ward & Co. v. Sewell, 5 Cir., 205 F.2d 463, 38 Am.Jur. 996; Alley v. Texas Electric Service Co., Tex.Civ.App., 134 S.W.2d 762; Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659."

The evidence in this case clearly shows what happened. The dogs kicked out causing the derrick to fall. Immediately after the accident here in question the same truck and winch were used to load the derrick in the same manner as before and no trouble was encountered. After the accident the winch was inspected by two or three disinterested parties and the truck and winch had been in continuous use from some time thereafter. Nothing had even been found wrong with it. Terry, the only one in charge of the truck and winch, had raised the derrick to about ten feet in the air and had stopped it and applied the instruments to hold the derrick and had turned around and was not touching any of the instruments when the derrick fell. The undisputed evidence here is that the dogs kicked out and that was the cause of the derrick falling and no inference of any other cause of the injury was presumable.

It is stated in Whitehead v. Montgomery, 228 S.W.2d 196 (Tex.Civ.App.—Waco, 1950, writ ref'd n. r. e.) as follows:

" 'The undisputed evidence shows that in hoisting the stringer, the ring to which the chains attached to the grappling hooks used by appellee were fastened slipped off of the large hook on the end of the pulley chain and this caused the timber to fall. The immediate cause of the accident being thus shown, there was no room for the application of the res ipsa loquitur rule; the only issues for the jury (aside from that of contributory negligence) being whether appellant was negligent in using this method of fastening the grappling hook chains to the pulley chain, and whether such negligence was the proximate cause of the injury.

\*      \*      \*      \*      \*      \*

" 'Presumptions or inferences cannot be indulged against proven facts; both give way when facts appear. When the evidence disclosed that the ring to which the grappling hook chains were attached slipped off the large hook at the end of the pully chain upon which it was placed, and this caused the timber to fall, no inference of any other cause of the injury was presumable and the rule of res ipsa loquitur could have no application.'

"This holding by our Texas courts is substantially the same rule as found in 38 Amer.Jur. sec. 303, p. 999.

"Our view is that the foregoing quotation is pertinent and applicable to the case at bar and that the trial court's judgment cannot be sustained on the theory of res ipsa loquitur. Here the evidence is without dispute that all the facts and circumstances relating to the falling of the truck while it was being moved are in evidence. It is without dispute that one of the chains that was being used to hold the truck up and in place so that it could be moved snapped and that this caused the truck to fall to the pavement. There is no contention

that the truck was damaged while being moved by defendant other than the damage it received when the chain snapped. Such being the undisputed facts no inference of any other cause for the injury was presumable and the rule of res ipsa loquitur could have no application here."

See also Robertson v. Southwestern Bell Telephone Co., 403 S.W.2d 459 (Tex.Civ. App.—Tyler, 1966, no writ) as follows:

"The law is well settled in Texas that where the evidence shows that an accident may have happened as the result of one or two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the doctrine of 'res ipsa loquitur' does not apply. Benkendorfer v. Garrett, 143 S.W.2d 1020, (Tex. Civ.App.) 1940, err. dism., judg. corr.

"In the case of Davis v. Castile, 257 S. W. 870, (Tex.Com.App.) 1924, it is stated as follows:

'Again, where the evidence shows that the accident may have happened as the result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply. \*   \*   \*'

"To the same effect see MontgomeryWard & Co., Inc. v. Sewell, 205 F.2d 463, (5th Cir., 1953) (a Texas case); Worth Steel Corporation v. Gartman, 361 S.W.2d 426, (Tex.Civ.App.) 1962, writ ref., n. r. e."

█ We are of the opinion, and so hold, that the rule of res ipsa loquitur does not apply in this case and that Special Issues 2 and 3 and the answers thereto will not support a judgment for the plaintiff.

Special Issue 10 was as follows: "Do you find from a preponderance of the evidence that Melvin Terry failed to determine if the winch clutch in question was properly engaged after he threw the toggle switch, if

he did?" Then by Special Issues 11 and 12 if such failure was negligence and proximate cause. The jury answered all three of those issues, "Yes." The toggle switch is a little switch placed outside of the truck cab where you can reach it and all you have to do is to reach outside and flip (what they called a little button). When you throw that switch that causes the air to force the free-wheeling dogs to go into the grooves on the winch itself. The dogs on the clutch had not been worn and when he flipped the toggle switch if it had not put the winch in gear it never would have picked up the derrick. Terry further testified that if the clutch was in gear the winch would work but if it was out of gear it wouldn't work. The winch did work and the derrick lifted for loading but the clutch dogged out and the derrick fell. The jury found that Terry did not fail to properly engage the winch truck in gear. The defendant objected to the submission of Special Issue 10 because it assumed that the clutch was not properly engaged. Mr. Stanley was placed on the stand by plaintiff as an expert on the handling of trucks and winches as here involved and testified in part as follows:

"Q. Mr. Stanley, you said that the dogs don't always go in gear, I believe that is what you said?

"A. Yes, sir.

"Q. When you are using the winch line you always have a little slack to take up?

"A. Yes, sir, usually.

"Q. When you are talking about this truck driver should look once in a while?

"A. Well, he should.

"Q. That is what I am getting at.

"A. Yes, sir.

"Q. But if the dogs don't engage it won't even pick up your slack, will it?

"A. That's right.

"Q. I can stand out there and pull it if the dogs are not engaged and the winch running, can't I?

"A. Yes, sir.

"Q. So, it won't even pick up the slack, would it?

"A. No, sir.

"Q. Now, in your experience as a truck driver, whenever it picks up the slack and starts moving a load there is no necessity in looking, because they are engaged, aren't they?

"A. You assume they are—

"Q. You would sure assume it, wouldn't you?

"A. Yes, sir.

"Q. There wouldn't be any point in getting out and kicking them, would there?

"A. No.

"Q. If it ever moves the slack you have got to assume they are in gear?

"A. Yes, sir.

"Q. And you will know by that slack, by the feel of your winch, and your motor, because you are not looking at your winch, are you, you are looking at your man out there?

"A. Yes, sir.

"Q. You know by the strain that your truck is taking whether they are in gear or not, don't you?

"A. Yes, sir.

"Q. And you don't look, and you don't do anything?

"A. No, sir."

There is no testimony in this record showing any negligence on the part of Mr. Terry. The machinery had worked and before the accident there was nothing to even suggest why Mr. Terry should even

question the winch clutch was not properly engaged. The plaintiff testified, "Something that happens sometimes that you just can't explain, or foresee, or do anything about it, and, yet, it does happen"; he just didn't know anything that defendant could have done. Others knew what happened but did not know why. We are of the opinion that the undisputed record shows that there was some failure of the machinery through no fault or negligence of anyone. Negligence or a failure to perform a duty required by law is never presumed as a fact but must be proved by evidence and the burden of proving it is on the parties seeking a recovery of damages by reason of such negligence or failure of duty. Carroll v. Roger Lacy, Inc., 402 S.W.2d 307 (Tex. Civ.App.—Tyler, 1966, writ ref'd n. r. e.) and the cases there cited. There is no evidence in this record to sustain a holding that defendant was negligent. We sustain defendant's fifth point of error.

■ It is plaintiff's contention that he was an invitee and that the defendant owed him the duty of reasonable care. There is no question about plaintiff not having the right to be on the oil well premises but the plaintiff testified that it was defendant's duty to load and haul off the derrick and that he had nothing to do with the loading and hauling off. If plaintiff was a business invitee as he contends, it was only to the extent of preparing the derrick to be moved and had no right to interfere with the loading since he had nothing to do with such loading. A person may be an invitee as to a certain place but not to another. The defendant did not authorize the plaintiff to go under the derrick while defendant was loading it. On the contrary he directed him not to go under it. The holding of the jury was that they did not find that plaintiff went under the derrick after being told by Mr. Eaton not to go under it but Terry and Eaton testified that Eaton had told the plaintiff not to go under the derrick before the plaintiff went under it. Eaton further told the plaintiff not to go under the derrick just before it fell but that was the second time he had told him not to go under it. Plaintiff did not deny the evidence of Terry and Eaton. Mr. Eaton testified he told plaintiff not to go under the derrick because he was afraid of the chain and that immediately after the accident, the plaintiff stated, "That damn chain did break." Plaintiff did not deny that evidence.

Since plaintiff had nothing to do with the loading and hauling off of the derrick and no one in authority authorized him to go under it and he immediately ran under the derrick, he was not rightfully upon that part of the premises where the derrick fell and would not be an invitee. There is nothing in this record to indicate Eaton had any reason to know or believe plaintiff would run under the derrick. It is stated in Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598 (1954) at 602 as follows:

"Another determining factor in favor of petitioner's contention that respondent under the evidence does not occupy the favorable status of an invitee and that it did not owe him the duty of ordinary care is the fact that respondent's injuries were sustained at a place on the premises which was not included within any invitation either express or implied. A person may be an invitee as to certain parts of the premises but not as to others. The rule is stated in 30 Tex.Jur. 863, Negligence, Sec. 180; 'The owner or occupant may be held liable only where it appears that the victim sustained the injury while using a part of the premises which was designed for his accommodation or use. * * * A recovery is not sustainable where the evidence leads to the conclusion that "it could not have been reasonably anticipated" that he would attempt to go to the place in which the injury occurred.' The place where the explosion occurred was not covered by the implied invitation as claimed by respondent. Granting that he had the right either as an invitee or licensee to cross the railroad tracks and pick up his work clothes and tools and that he so acted for that purpose, the fact

that he went beyond the carpenter shop, a distance of 123 feet, precludes recovery either as an invitee or licensee. 65 C.J.S. Negligence § 48a, pp. 535–538; Id., § 43 (4), p. 514; 38 Am.Jur. 761, Negligence, Sec. 100; Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S.W. 756. No one in authority invited respondent to the premises where the explosion occurred; hence, he is not entitled to recover on the theory that he was an implied invitee. Cowart v. Meeks, supra [131 Tex. 36, 111 S.W. 2d 1105]."

See also Swift & Co. v. McElroy, 126 S.W.2d 1040 (Tex.Civ.App.-Fort Worth, 1939, no writ).

From what we have heretofore stated, we do not believe it is necessary to discuss the volenti doctrine as urged by the defendant; but since the jury held there was a danger that the derrick section might fall but that plaintiff did not know and appreciate the danger that the section might fall and that the plaintiff voluntarily exposed himself to the risk when he went under the derrick, we think the jury was in error in holding the plaintiff did not appreciate the danger that the section might fall. The evidence of Eaton that he informed the plaintiff that he was afraid of the chain breaking and was not denied and the undenied testimony that as quick as plaintiff was injured that he stated, "That damn chain did break," that this would show the plaintiff must have realized there was such danger after a warning as here given. The fact that the derrick had never fallen before would be no evidence that it might never fall, and we believe the undisputed record shows that the plaintiff was charged with knowledge and appreciated the danger. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963). See also Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954).

Since the case has been fully developed, we deem it unnecessary to reverse and remand. Judgment of the trial court is reversed and rendered.