## GULF PIPE LINE CO. v. BAILEY.
### No. 3974.

Court of Civil Appeals of Texas. Texarkana.
June 18, 1931.

Rehearing Denied July 4, 1931.

Joe S. Brown, of Houston, McKinney & Berry, of Cooper, and Emmet Thornton, of Sulphur Springs, for appellant.

J. K. Brim and Ramey & Davidson, all of Sulphur Springs, for appellee.

LEVY, J. (after stating the case as above).

The appellant presents the points in view, in effect, that there is no evidence going to show negligence in the manner and way (1) in which the excavation was made for the pipe line, or (2) in refilling or closing the excavation after the pipe was laid. In December, 1928, floodwaters, such as were usual, broke through a portion of the levee and flooded the adjoining pasture, inflicting loss and injury to the cattle of appellee. The break in the levee embankment was, as proven, about "30 or 40 feet" wide, and the base or earth underneath the levee was undermined, "about 12 feet below the surface." No other portion of the levee broke, and no other portion of the earth underneath was undermined, except this particular part where the pipe line was run. And it was affirmatively shown that a break in this particular section of the levee had not previously occurred during the seven years from the time of the construction of the levee in 1921, until the present time of December, 1928. The levee embankment and the base, or earth underneath it, were previous to that time in a reasonably safe and perfect condition, and held the floodwaters and prevented any overflowing of the adjacent land. As going to show that the hole in the levee causing the injury was through the fault alone of the appellant, there was offered the circumstances that in July, previous, the appellant made excavations in the earth under the levee embankment to lay an additional pipe line. An excavation was made to the depth of about six feet and the pipe laid therein. Although not shown by affirmative evidence, yet it would be presumed that after laying the pipe the excavations were refilled with dirt and the dirt tamped. No other probable cause for the break in the levee embankment and the earth underneath the embankment was made to appear, except the running of the pipe line in the earth. As is apparent, there was caused a weakening of the embankment of the levee and the earth underneath by the excavation for the laying of the additional pipe line. It is inferable that the weakening of the embankment and earth underneath was in consequence of the manner and way in which the excavation was made, or in refilling the excavation, for the physical circumstances relating to the break point forceably to that inference. Quoting from the witness who described the break: "The hole in the ground was 10 or 12 feet deep, I take it. The break in the levee was right over all three of the pipe lines. The whole works had been washed out from the lines. The hole that washed out, where the pipe line crossed, and where the break happened, in the levee showed to be

about 12 feet below the natural surface, and the pipes of the pipe line were just hanging."

The break in the embankment may not be regarded as merely a breaking away of the embankment and earth, without any evidence pointing to any efficient cause for the break. It is believed the jury in all the circumstances were warranted in concluding, in point of fact, that the hole in the embankment would not have happened in the usual and ordinary course if the work of excavation and refilling had been done with reasonable care and in a protective manner. Circumstances attending the injury may, as a general rule, afford proof of negligence. 6 Thompson on Neg. (1905) § 7863; 20 R. C. L. § 163, p. 197; 45 C. J. p. 1267. In the facts, it was the duty of the appellant in running the pipe line to have taken precaution to avoid any weakening in the levee, being charged with notice, as it was, that at this section of the levee great volumes of water were thrown against the embankment in the usual freshet and flood times in the winter months because of the necessary levying of the river in an "elbow shape." As shown by the proof, there was a choice of modes of running the pipe line that would have avoided a break in the levee in flood times.

The appellant excepted to the court's definition of proximate cause and requested, and the court refused to give, a special instruction covering the correction pointed out and claimed to be error. The point made is that the definition in the court's charge omitted the element that the result must have been one which might reasonably have been foreseen. As defined in the part of the court's instruction complained of, "proximate cause is that cause, which in a natural and continuous sequence, unbroken by any new independent cause, produces an event, and but for which the same would not have happened." The definition given by the court was not an incorrect one, and neither was it inapplicable to the case. The instruction means, as the jury could have readily understood, that the act or omission which immediately causes the harmful result and without which such harmful result would not have happened, shall be deemed the proximate cause of an injury. There is no pretense in the evidence of any other cause for injury except the flood. The break in the levee let the floodwaters over and upon the adjoining pasture land. Impounded waters, as the appellant must be held to have known would come within the levee, embody perils when the embankment is weakened by excavation. Appellant could, as conclusively appears, have reasonably foreseen the harmful results in evidence.

The appellant excepted to the refusal of the court to give the requested issue, "Could the plaintiff, his agents or employees, have lessened the damages, if any, by the use of ordinary care and the expenditure of a reasonable amount of labor and time, or both?" The appellant points out that there was evidence going to show after the land became overflowed the appellee could have gone in the pasture and have driven a part of the cattle to high ground nearby, saving a portion of the cattle from being damaged. The evidence of appellee goes to show that the pasture was a large one of several miles length, and that when the break occurred the high water and the muddy condition of the ground prevented getting to the cattle, and made it difficult to drive them out or to the foothills. The court submitted to the jury the following issue: "Do you find from the evidence that the plaintiff was guilty of contributory negligence in failing to remove the cattle from the overflow area?"

This latter issue, as submitted by the court, did not limit or undertake to limit the finding of contributory negligence to doing something before the break and overflow, or after it had been seen that there was a probability of the levee breaking. It is an elementary principle that a party claiming damages must not be in fault in contributing to them by his own want of proper care. Such care must extend to the protection from further loss after the act complained of occurs. If such party fails to use such diligence, his negligence is regarded as contributing to his injury. Had the jury answered the issue "Yes," then, as the legal effect, the appellee would have been denied a recovery. It would seem, therefore, that the issue as submitted to the jury sufficiently covered the facts of the case, and that reversible error may not be predicated upon the refusal to give the requested charge.

The appellant points out under proper assignments of error that the appellee was erroneously permitted to offer evidence showing that appellant repaired and paid for the break in the levee. It is claimed that the evidence was intended to be considered as showing prior negligence. It is well settled that subsequent repairs cannot be shown for the purpose of proving prior negligence. But the appellee claims, and in that view there was no error, that the evidence was merely to show control by appellant over the excavation made under the levee at the time it was made. 45 C. J. p. 1235.

We have examined all the other assignments of error and conclude that reversible error may not be predicated thereon.

**The judgment is affirmed.**