Victor A. **PEKAR**, Appellant,

v.

**ST. LUKE'S EPISCOPAL HOSPITAL**
**et al., Appellees.**

No. 5855.

Court of Civil Appeals of Texas,
Waco.

July 27, 1978.

Rehearing Denied Sept. 7, 1978.

John H. Holloway, Rex C. Mounger, Mounger & Whittington, Houston, for appellant.

Charles D. Boston and Timothy R. Bersch, Fulbright & Jaworski, Sam W. Cruse, Jr., Andrews, Kurth, Campbell & Jones, Houston, for appellees.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Pekar from taking nothing judgment rendered on an instructed verdict for defendants St. Luke's Hospital, Dr. Cameron and Dr. Henry in a medical malpractice case.

Plaintiff sued the hospital and the two doctors alleging that Dr. Cameron and Dr. Henry operated on his back in St. Luke's

Hospital on August 10, 1971; that when he submitted to the control of the 3 defendants on August 10, 1971 he did not have a "winged scapula condition of the right shoulder blade"; that upon regaining consciousness following surgery his right shoulder blade protruded and such condition has been medically diagnosed as a "winged scapula condition"; that he has no knowledge or way of knowing what happened to his body while he was unconscious; that a winged scapula condition does not ordinarily result from an operation of the type plaintiff had; but is an injury which does not ordinarily occur unless there is negligence on the part of someone; that all personnel and equipment at the hospital were under the exclusive control of one or more of the defendants while plaintiff was sedated; that since plaintiff emerged from the operation with the winged scapula condition, it is incumbent on defendants to come forward with evidence to demonstrate absence of negligence in causing plaintiff's injury. Plaintiff alleged Drs. Cameron and Henry performed a properly done operation on him; but that one or more of the defendants or their employees, negligently did or failed to do some act which resulted in plaintiff's sustaining a winged scapula injury; that such condition is a serious permanent injury; deprives plaintiff of substantial use of his right shoulder; impairs his work at job, home and recreation; to his damage of $501,000.

The hospital answered by general denial and plead plaintiff's condition was caused by physical conditions and developments unrelated to his hospital care. The two Doctors answered by general denial.

Trial was to a jury. At the close of plaintiff's evidence all defendants moved for instructed verdict, asserting: 1) There is no evidence the winged scapula (or other asserted conditions) of plaintiff were caused by any negligent act of any defendant or their employee; 2) the doctrine of res ipsa loquitur is not applicable to this case.

The trial court granted such motions; instructed the jury to return a verdict for all defendants; and rendered judgment plaintiff recover nothing from the three defendants.

Plaintiff appeals contending:

1) The trial court erred in sustaining the Hospital's motion for instructed verdict since a fact issue of negligence and proximate cause was raised under the evidence and plaintiff's pleading of "res ipsa loquitur".

2) The trial court erred in sustaining Drs. Cameron and Henry's motion for instructed verdict since a fact issue of negligence and proximate cause was raised under the evidence and plaintiff's pleading of "res ipsa loquitur".

3) The trial court erred in sustaining the Hospital's motion on instructed verdict because the evidence raised a fact issue as to whether the injury to plaintiff's right shoulder, cheek area and right ankle, was due to the negligence of the hospital's employees in the handling of plaintiff while he was under anesthetic.

4) The trial court erred in sustaining Drs. Cameron and Henry's motion for instructed verdict because there was evidence raising a fact issue as to whether the injury to plaintiff's right shoulder, cheek area and right ankle was due to the negligence of the doctors or their employees in the handling of plaintiff while he was under anesthetic.

Plaintiff testified Dr. Cameron operated on his back at the L–5 level with fusion in 1965; that he reinjured his back in 1971 (at which time he was 35 years old); that Dr. Cameron and Dr. Henry operated on a disc at the L–4 level on August 10, 1971; that prior to receiving anesthetic he had no pain in his right shoulder; did not have a "winged scapula"; had no pain in his feet or injury to his face; that on becoming conscious his right foot was completely dead; his right shoulder was burning; and he had pain in his right cheek below his right eye; that when back home he looked in the mirror and saw that his right shoulder blade stuck out. He told the nurses while in the hospital of his right cheek,

right shoulder and right ankle problems. Thereafter he told Dr. Cameron of the shoulder and right foot injury, and told Dr. Henry about the bruises under his right eye, and his leg and shoulder injury. In 1974 he had surgery on his right ankle; and on his right cheek to remove a blood vessel which had broken and clotted. He fractured his right ankle when he was 17 years old, and in 1973 his lower foot was injured in a volleyball game, which required treatment at the hospital; and he was in an automobile accident in 1967 which required medical treatment for a neck injury and muscle spasms, and for which he filed a suit for $50,000. He did not remember receiving any injury, and assuming he did receive an injury he doesn't know whether it occurred in the operating room, the recovery room or in his hospital room.

Plaintiff's wife testified that prior to surgery in August 1971 plaintiff had no complaints involving injury to his right ankle, cheek or other part of his body; that when he became conscious he complained of his back, right cheek and right shoulder; that the day plaintiff came home from the hospital she learned of the winged scapula condition of his right shoulder.

Dr. Cameron testified he examined plaintiff prior to admission to the hospital in August 1971, and again after admission; that there was no evidence of any injury or disability to plaintiff's right foot, altho plaintiff advised him the ankle had been previously fractured; that he did not have a winged scapula or evidence of injury to his right shoulder; that he did not notice any injury to his right cheek; that plaintiff was given anesthetic; the surgery performed (removal of disc and spinal fusion); that plaintiff was removed to the recovery room and then to his hospital room by the anesthetist and hospital personnel; that he first learned of plaintiff's shoulder condition September 3, 1971; that the winged scapula was probably caused by a viral infection, but could be caused by a blow to the back or pressure on the long thoracic nerve; that he checked plaintiff's hospital record and noted there were 24 documented observations, but no notations of bruises or winged scapula; that plaintiff's 1974 right ankle surgery was for "tung torsal syndrome which is a tightening of a ligament on a nerve; that an ankle fracture can lead to this problem over a period of years; that nothing in the 1971 surgery could cause this, that the most probable cause of the ankle condition was the old fracture of the ankle.

Dr. Oates, a physical medicine specialist, testified he first saw plaintiff in July 1974; that plaintiff had a "winged scapula," and damage to his right ankle; that he had "no definite idea whatsoever what might have caused the two sets of nerve damage"; that plaintiff being in surgical position 3½ hours may "well have damaged" the right ankle; and with plaintiff face down on his right cheek could cause the face a bruise; that the movement of plaintiff while sedated by the nurses pulling on the arm could damage the long thoracic nerve.

Dr. Henry testified he checked plaintiff before the surgery; remembered no bruises on plaintiff's right cheek; that the tests were slightly abnormal on the right leg; that the anesthetist and operating room assistants moved the patient from the hospital bed to the operating table; that the surgery would not injure plaintiff's right foot; that abnormal positioning of the foot during the surgery could cause injury to the nerve; that the hospital record of August 19, 1971 notes "a slight numbness in the right heel"; that plaintiff was heavily sedated for three days after the surgery; that a violent jerk in turning such a patient could injure the long thoracic nerve; the nurses and personnel who move patients from the operating room to the recovery room and into the hospital room are under the hospital.

Succinctly stated, the evidence reflects that plaintiff had no injury to his right shoulder, right ankle and right cheek prior to his surgery; that following his surgery he had such problems. There is no evidence that any defendant or employees of any defendant, did any act or failed to do any act, proximately causing plaintiff's injuries.

Dr. Cameron testified that plaintiff's winged scapula shoulder condition was probably caused by a viral infection; but could be caused by a blow or pressure to the long thoracic nerve; that the right ankle injury was most probably caused by the old fracture of the ankle. There is evidence the ankle injury could be caused by abnormal positioning of plaintiff during the surgery; and that the shoulder condition could be caused by jerking or pulling on the arm; and that the right cheek condition could be caused by plaintiff's positioning during surgery.

Plaintiff speculates in his brief that he may have been dropped or mishandled during the surgery or during the removals to the recovery room or his hospital room or that he may have been mispositioned on the operating room table, but offers no evidence that any of the above occurred.

▮ In determining the correctness of an instructed verdict we must consider only the evidence favorable to plaintiff, together with all reasonable inferences therefrom. *Triangle Motors v. Richmond*, 152 Tex. 354, 258 S.W.2d 60; *Anderson v. Moore*, Tex., 448 S.W.2d 105.

▮ Nevertheless, an inference cannot rest on an inferred fact; a presumption cannot rest on a fact presumed; and facts upon which an inference may rest must be established by direct evidence. *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791; *McClish v. R. C. Young Feed & Seed Co.* (Amarillo, Tex.Civ.App.) Er. Ref., 225 S.W.2d 910.

But plaintiff contends that under the evidence and "res ipsa loquitur" issues of negligence and proximate cause were raised.

The doctrine of res ipsa loquitur is generally held by Texas courts to be inapplicable to medical malpractice cases. *Harle v. Krchnak* (1 Houston, Tex.Civ.App.) NWH, 422 S.W.2d 810; *Shockley v. Payne* (Amarillo, Tex.Civ.App.) NRE, 348 S.W.2d 775; *Bell v. Umstattd* (Austin, Tex.Civ.App.) NRE, 401 S.W.2d 306.

▮ An exception to this rule is recognized where the nature of the alleged mal-practice and injuries are plainly within the common knowledge of laymen, as where the negligence alleged is in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. In such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains. *Louis v. Parchman* (Fort Worth, Tex.Civ.App.) NRE, 493 S.W.2d 310; *Stinnett v. Price* (Amarillo, Tex.Civ.App.) NRE, 446 S.W.2d 893; *Rayner v. John Buist Chester Hospital* (Waco, Tex.Civ.App.) NRE, 526 S.W.2d 637. See also: *Irick v. Andrew* (14 Houston, Tex.Civ.App.) NRE, 545 S.W.2d 557; *Forney v. Memorial Hospital* (Beaumont, Tex. Civ.App.) NRE, 543 S.W.2d 705.

In this case no act or failure to act has been proved as to any defendant or their employees. The evidence shows that plaintiff's injuries *could* have occurred from causes other than defendant's acts or omissions, and such have not been negated. And the evidence does not show that plaintiff's injuries were probably caused by some act or failure to act on the part of defendants, and does not show that plaintiff's injuries or conditions could only have occurred by the negligence of defendants or their employees. *Southwest Texas Methodist Hospital v. Mills* (Tyler, Tex.Civ.App.) NRE, 535 S.W.2d 27; *Smith v. Caplan*, (Amarillo, Tex.Civ.App.) NRE, 425 S.W.2d 477; *Trio Transport, Inc. v. Henderson* (Amarillo, Tex.Civ.App.) NRE, 413 S.W.2d 806; *Longoria v. Violet Gin Company* (San Antonio, Tex.Civ.App.) 309 S.W.2d 484; *Graham v. Fed-X, Inc.* (Fort Worth, Tex. Civ.App.) NRE, 384 S.W.2d 785; *Davis v. Castile*, Tex.Com.Appls., 257 S.W. 870; *Benkendorfer v. Garrett* (San Antonio, Tex. Civ.App.) Er. Dismd., 143 S.W.2d 1020; *Texas & P. Coal Co. v. Kowsikowsiki*, 103 Tex. 173, 125 S.W. 3.

▮ Further, mere proof of an injury, in the absence of proof of the manner in which it was received and the circumstances attending the occurrence thereof, is insufficient to warrant an inference of negligence

on the part of a defendant, and to invoke the res ipsa loquitur doctrine. *Patrol Valve Company v. Farrell* (Amarillo, Tex.Civ. App.) NRE, 316 S.W.2d 92; *Socony Mobil Company, Inc. v. Southwestern Bell Telephone Co.* (Corpus Christi, Tex.Civ.App.) NWH, 518 S.W.2d 257.

■ The doctrine of res ipsa loquitur does not apply in this case.

All plaintiff's points and contentions are overruled.

AFFIRMED.