**James DUFF, Appellant,**

v.

**Dr. Frank YELIN, et al., Appellees.**

**No. 01–85–0536–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 28, 1986.

Rehearing Denied Dec. 11, 1986.

John H. Holloway, Houston, for appellant.

Randall E. Butler, Fulbright & Jaworski, V. Paige Pace, Fulbright & Jaworski, Houston, Kevin J. Keith, Bailey & Williams, Dallas, for appellees.

## OPINION

Before EVANS, C.J., and DUNN and HOYT, JJ.

DUNN, Justice.

Appeal is taken from the trial court's judgment that appellant take nothing against Dr. Yelin and St. Luke's Episcopal Hospital in this medical malpractice action.

On November 7, 1977, appellant was admitted to St. Luke's complaining of pain in his left shoulder and arm. A cervical laminotomy and foraminotomy (neck surgery) was performed on appellant by Dr. Frank Yelin, a neurosurgeon, on November 10, 1977. Hospital records reflect that, on November 14, appellant complained of numbness and tingling in his right hand. Appellant was dismissed from St. Luke's on November 17, but continued to see Dr. Yelin for treatment of the right ulnar nerve. Damage to this nerve causes numbness and tingling of the affected hand. On December 5, 1977, appellant was admitted to Methodist Hospital for decompression of an ulnar nerve neuropathy (elbow surgery), also performed by Dr. Yelin. This operation was intended to relieve the numbness and tingling in appellant's right hand. Dr. Yelin last saw appellant on February 28, 1978, and his records reflect that appellant was steadily improving from the surgery performed on December 5, 1977.

Appellant filed suit on November 9, 1979, against Dr. Yelin, J. Freeman, Mahmud Ali, M.D., and St. Luke's Episcopal Hospital. Freeman and Ali are, respectively, a student nurse in anesthesiology and an anesthesiologist. In his pleadings, appellant alleged that his surgery was unnecessary, and that the defendants were negligent in failing to properly pad and protect him from injury to his ulnar nerve during the first surgery on November 10, 1977. Appellant also alleged that Dr. Yelin was negligent in performing the surgery, and that he failed to obtain appellant's informed consent.

Trial began on January 22, 1985. Appellant and his wife testified regarding his pain, disability, and mental anguish resulting from the damage to his right ulnar nerve. Appellant and his wife stated that he had first complained of numbness and tingling in his right hand when he regained consciousness after the neck surgery on November 10, although the hospital records do not reflect that appellant complained of any such discomfort until November 14, four days later. Appellant testified at trial that, "at the time it seemed like my whole hand was asleep," but that he later realized the discomfort was limited to his ring and little fingers.

Appellant also presented portions of the deposition of Dr. Mahmud Ali, the anesthesiologist present during the November 10 surgery, and called Dr. Yelin as an adverse witness. Appellant presented no independent expert testimony.

At the close of appellant's case, both St. Luke's and Dr. Yelin moved for an instructed verdict. The trial court granted the motion as to St. Luke's on all grounds, and for Dr. Yelin on all issues except that of appellant's informed consent to both surgical procedures. In answer to special issues, the jury found that Dr. Yelin did not fail to disclose such risks and hazards as would have influenced a reasonable person in making a decision whether to consent to the neck surgery, but that Dr. Yelin did fail to disclose alternatives to surgical treatment which could have influenced a reasonable person in making a decision as to whether to undergo the elbow surgery. However, the jury determined that appellant would have submitted to the procedure

even had he been informed of all alternative procedures, and further found that appellant suffered no damages resulting from any of the occurrences.

Based on the evidence and the jury's answers to special issues, the trial court rendered judgment that appellant take nothing against Dr. Yelin or St. Luke's Episcopal Hospital.

In appellant's first point of error, he contends that the trial court erred in granting St. Luke's motion for instructed verdict because there was some evidence of probative force that the hospital personnel negligently caused his right ulnar nerve injury during or following the neck surgery performed on November 10, 1977, while he was under the influence of anesthetics.

Specifically, appellant claims that there was evidence before the trial court demonstrating that such injury occurs where there is a (1) failure to properly position and pad the elbow area prior to surgery, (2) failure to avoid trauma or pressure on the nerve while the patient is being moved while under anesthetics, (3) failure to maintain the arm in proper position during surgery, or (4) permitting the patient's arm to sustain pressure or trauma while on a gurney in the recovery room; and there being evidence that this is a "very rare injury" and one which is ordinarily avoided if the proper care is maintained in handling the anesthetized patient.

St. Luke's motion for instructed verdict asserted, among other things, that there was no evidence of a breach of the standard of care in surgery, the recovery room, or in appellant's hospital room. We agree.

The facts of this case are similar to those of *Pekar v. St. Luke's Episcopal Hospital,* 570 S.W.2d 147 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The plaintiff in *Pekar* suffered an injury to his shoulder blade while hospitalized for unrelated surgery, and speculated that, while under the influence of anesthesia, he had been dropped or mishandled either during the surgery or during the removals to the recovery room or his hospital room, or that he may have been mispositioned on the operating room

table. As in the present case, the plaintiff in *Pekar* offered no evidence that any of the suggested acts, or failures to act, occurred. The appellate court held that, while the trial court's granting of an instructed verdict for the defendants required the review of all evidence favorable to the plaintiff and all reasonable inferences therefrom, "[n]evertheless, an inference cannot rest on an inferred fact; a presumption cannot rest on a fact presumed; and facts upon which an inference may rest must be established by direct evidence." *Id.* at 150.

Here, appellant failed to offer any evidence of negligence by St. Luke's personnel. Both he and his wife testified that nothing untoward occurred while he was being transported to surgery and back, or after he awoke in the recovery room. Appellant was awake in the recovery room for approximately one hour before being taken to his hospital room. He stated that he thought he "certainly would have known if anything had been done by any of the nurses to cause this injury," and that he did not notice any problem with his right hand when he awoke in the recovery room.

Dr. Yelin testified that this statement by appellant would lead him to rule out the recovery room as a scene for the ulnar nerve injury to have taken place, and that, based on a reasonable degree of medical probability, he would expect a patient such as appellant to discover the ulnar nerve injury upon awakening from the anesthesia and becoming alert.

Appellant testified that the nurses in his hospital room made notes on his condition about every hour or so, and specifically, that they recorded complaints of his neck pain. He concedes that there was nothing in the nurses' notes, made the first day after his surgery, regarding his complaint of numbness in his right hand. Although appellant and his wife testified that the nurses were informed of the numbness the first day, he admitted on cross-examination that he had previously testified that he did not know when he had first reported the discomfort in his hand.

Dr. Yelin testified on behalf of the hospital as follows:

Q. Doctor, I want to ask you whether you have an opinion, based on reasonable medical probability, as to whether an injury such as this can occur despite nurses and other hospital personnel taking all precaution that they're expected to take in the ordinary practice of their duties in the hospital?

A. I do.

Q. And what is that opinion?

A. It could.

Q. And are you saying it could take place even though they have done everything that they're expected to do and—in the operating room, in the recovery room, or even in the patient's room?

A. That's correct.

██ An instructed verdict is proper when there is no evidence to raise a fact issue as to one or more propositions that a plaintiff must establish in order to recover. *Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 59 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Appellant presented no evidence at trial which leads to the conclusion that one or more of the enumerated instances of negligence occurred. Therefore, the trial court properly instructed a verdict for St. Luke's.

Appellant's second point of error contends that the trial court erred in granting Dr. Yelin's motion for an instructed verdict on appellant's negligence theories that the ulnar nerve injury was caused by: 1) a failure to properly pad the elbow during surgery; 2) a failure to avoid trauma or pressure on the nerve while being moved under anesthetics; or 3) a failure to avoid trauma or pressure on the nerve while the patient was maintained in the recovery room, there being some evidence of probative force that such injury was proximately caused by Dr. Yelin or his agents, servants or employees entrusted with the care of appellant.

██ In a medical malpractice cause of action, a plaintiff, in most circumstances, must prove by expert testimony that the treatment or care of the patient was such as to constitute negligence and that such negligence proximately caused appellant's injuries. *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.1965). In the present case, both the testimony of Dr. Yelin, the neurosurgeon, and that of Dr. Ali, the anesthesiologist, indicated that appellant's arm was properly positioned and padded prior to surgery, that pressure on the ulnar nerve was avoided while appellant was being moved while under anesthetics, and that appellant's arm was maintained in proper position during surgery. Neither doctor could remember precisely what had occurred at the time of appellant's surgery, seven years prior to trial, but both testified that they would have not have performed their duties had appellant's arm been improperly positioned.

While conceding that negligence such as that alleged by appellant could possibly cause an ulnar nerve injury in some cases, both doctors also testified that appellant's ulnar damage could have occurred as a result of appellant moving himself in bed following his return to his hospital room after the surgery. Dr. Ali, an anesthesiologist, testified that he was not an expert in the field of neurosurgery, and that he had *no* opinion, based on reasonable medical probability, as to how appellant's ulnar nerve injury occurred.

Dr. Yelin testified that, in his expert opinion, such movement by appellant in his hospital bed was the probable cause of his injury:

Q. Doctor, do you have an opinion, based on reasonable medical probability, as to when Mr. Duff's ulnar nerve injury took place?

A. I do.

Q. And what is that opinion?

A. That it occurred on or near the—or on the fourth post-operative day.

Q. Do you have an opinion, based on reasonable medical probability, as to how the ulnar nerve injury occurred?

A. I do.

Q. And what is that opinion?

A. That it probably occurred while he was either moving around in bed with his elbows, or resting his elbows on the bed.

Appellant presented no expert testimony in rebuttal.

■ In a medical malpractice case, the proof must establish a causal connection without the use of conjecture or speculation. The testimony must show more than a mere possibility. *Lenger v. Physician's General Hospital*, 455 S.W.2d 703, 706 (Tex.1970). "Expert testimony that the event is a possible cause of the condition cannot ordinarily be treated as evidence of reasonable medical probability except when, in the absence of other reasonable causal explanations, it becomes more likely than not that the condition did result from the event." *Id.* at 707.

In the present case, the only evidence of "reasonable medical probability" was the testimony of Dr. Yelin that appellant's injury was caused by his own movements in the hospital bed following his return from the recovery room. It is well established that a physician's opinion testimony must be based upon "reasonable medical probability", as opposed to a mere "possibility", since almost anything is "possible" in the field of medicine. *Lee Boone v. United Founders Life Insurance, Co.*, 565 S.W.2d 380, 381–82 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). We find that the proof offered by appellant consisted of medical possibilities and failed to establish a causal connection between his injury and the negligence he alleged to have occurred prior to or during the surgery. *See, Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949).

In answer to appellant's third proposition regarding the recovery room, there is no evidence to support appellant's claim that the ulnar nerve injury was proximately caused by Dr. Yelin or his agents, servants, or employees in the recovery room. Dr. Yelin's testimony established that the recovery room care of appellant was entrusted to the hospital personnel in that facility. Appellant's claim of negligence on the part of the hospital personnel has been addressed in his first point of error.

■ In a negligence action, the threshold question is whether a defendant owed a "duty" to perform the acts alleged to have been wrongfully committed. *Northwest Mall, Inc. v. Lubri-Lon, Inc.*, 681 S.W.2d 797 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Appellant offered no evidence to establish Dr. Yelin's legal duty to oversee appellant's care in the hospital recovery room.

Appellant's second point of error is overruled.

Appellant's third point of error contends that the trial court erred in granting Dr. Yelin's and St. Luke's motions for instructed verdict on the issues of negligence and proximate cause related to appellant's theories of negligence in causing the ulnar nerve injury while he was in the care, custody, and control of the defendants, jointly and severally, and unable to care for himself because under the influence of anesthetics. He claims there was some evidence raising a fact issue of joint liability, or liability under respondeat superior, as to both Dr. Yelin and St. Luke's.

Respondeat superior is a doctrine which holds the master liable for the tort of his servant committed in the course of the servant's employment. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 589 (Tex.1964). The doctrine of joint and several liability is a judicially created vehicle for enforcing remedies for wrongs committed. It represents a deliberate allocation of risk, and is justified on public policy grounds. *See Dutcher v. Owens*, 647 S.W.2d 948, 950 (Tex.1983).

■ The doctrines of respondeat superior, and joint and several liability, are policy doctrines that come into play *following* a finding of liability. As such, they cannot preclude the granting of an instructed verdict. Since the evidence does not support a finding of negligence on the part of either Dr. Yelin or St. Luke's, it was not error for the trial court to grant an instructed verdict in favor of them.

Appellant's third point of error is overruled.

Appellant's fourth point of error alleges that the trial court erred in sustaining Dr. Yelin's objection to his alternative theory of "res ipsa loquitur" in connection with the ulnar nerve injury because the injury does not ordinarily occur in the absence of negligence, and appellant was under anesthetics and in the exclusive care of appellees, jointly and severally, at the time the injury most likely occurred.

■ Res ipsa loquitur is a rule of evidence which allows the jury to infer negligence. *Jones v. Tarrant Utility Company*, 638 S.W.2d 862, 865 (Tex.1982). To establish the doctrine of res ipsa loquitur, appellant must establish (1) that the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) that the instrumentality causing the injury is under the exclusive management and control of the defendant. *Honea v. Coca Cola Bottling Co.*, 143 Tex. 272, 183 S.W.2d 968 (1944).

■ In the present case, appellant failed to establish either that the injury to his ulnar nerve would not ordinarily have happened in the absence of negligence on the part of appellees, or that the cause of the injury was an instrumentality or occurrence within appellees' exclusive control. In fact, the evidence shows that appellant probably caused his own injury, in his hospital room, after recovering from the anesthesia.

Appellant's fourth point of error is overruled.

In his fifth and sixth points of error, appellant avers that the trial court erred in denying his motion for new trial because of the jury's negative finding to special issue no. 1, since the undisputed evidence established "as a matter of law" that Dr. Yelin failed to obtain the appellant's informed consent for the neck surgery performed on November 10, 1977, and also that the negative finding to special issue no. 1 is so against the overwhelming weight and pre-ponderance of the evidence as to be manifestly wrong and unjust.

Special issue no. 1 asked the jury to find whether, "prior to the neck surgery on November 10, 1977, Dr. Yelin failed to disclose such risks and hazards as could have influenced a reasonable person in making a decision to give or withhold consent to such surgical procedure". In response, the jury found that Dr. Yelin did not fail to disclose such risks and hazards. Appellant complains that this finding by the jury is against the great weight and preponderance of the evidence, and because the contrary conclusion was established "as a matter of law". Appellant's contention requires this Court to weigh and consider all of the evidence. *See Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984); *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ In order for appellant to establish liability against Dr. Yelin for failing to disclose risks in the neck surgery, appellant must prove, by expert testimony, that the medical condition complained of is a risk inherent in the medical procedure performed. *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983). However, appellant offered no evidence at trial to show that an ulnar nerve injury in the right elbow area was an inherent risk of the neck surgery performed on November 10, 1977. The only medical evidence presented on this issue was that no aspect of the neck surgery procedure could have caused the ulnar nerve injury. Dr. Yelin further testified that he informed appellant of all risks inherent to the neck surgery. Therefore, the evidence is sufficient, both factually and legally, to support the jury's finding to special issue no. 1.

Appellant's fifth and sixth points of error are overruled.

In his seventh point of error, appellant urges that the trial court erred in denying his motion for new trial because the jury's negative finding to special issue no. 4 is contrary to the undisputed evidence and as a matter of law the failure to "furnish appellant an informed consent" for the sur-

gery involving the ulnar nerve would have caused a reasonable and prudent person to refuse such procedure if so advised of such alternatives and risks, and further because the negative finding is so contrary to the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust.

In response to special issue no. 3, the jury found that Dr. Yelin had failed to disclose alternatives to surgical treatment to appellant prior to the surgery on appellant's elbow. Special issue no. 4 then asked the jury to determine whether a person of ordinary prudence would have refused the surgical procedure under the same or similar circumstances if the alternatives to surgical treatment had been disclosed. In response, the jury found that a person of ordinary prudence would not have refused the surgical procedure if so informed.

■ Appellant alleges that, had he been informed that his ulnar nerve injury was transitory, and that normal use of his right hand would have been regained through exercise and conservative treatment, he would have not consented to the elbow surgery. However, no evidence was presented to show a reasonable medical probability that appellant would have regained the use of his right hand through exercise and conservative treatment, or that the injury was only transitory. Dr. Yelin provided the only testimony on this issue, and he testified that any prudent neurosurgeon would have recommended the second surgery to appellant to resolve his existing pain and weakness in his right arm. Therefore, the only evidence presented at trial raised a fact issue for the jury to determine, i.e., whether a reasonable person would have refused the elbow surgery had he been informed of the advantages and disadvantages of any alternative. On the basis of the evidence before them, the jury determined that a reasonable person would not have refused the surgical procedure under the same or similar circumstances. We find that the evidence is suffi-

cient, both legally and factually, to sustain the jury finding.

Appellant's seventh point of error is overruled.

In points of error eight and nine, appellant alleges that the trial court erred in denying a new trial because the zero damages findings to special issue nos. five and six are so against the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust, and such finding establishes, as a matter of fact and as a matter of law, that the jury was attempting to "write a judgment" favorable to appellees, or was guilty of probable bias or prejudice against appellant.

In response to special issue no. 5, the jury found that the total amount of appellant's damages for past physical pain and mental anguish, future physical pain and mental anguish, past and future loss of earnings, and past and future physical impairment, are nil. In response to special issue no. 6, the jury found that appellant was not entitled to any compensation for his hospital expenses, doctor's expenses or medical services incurred by him as a proximate cause of the "occurrences in question."

■ In the absence of a favorable finding on the issues of liability, a party is unable to show that the refusal to find damages constitutes harmful error. *Eckert v. Smith*, 589 S.W.2d 533, 538 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The jury's finding that appellant suffered no damages is entirely consistent with their finding that a reasonable person would not have refused the elbow surgery even if advised of the alternatives to surgical treatment.

Appellant's eighth and ninth points of error are overruled.

In his tenth point of error, appellant complains that the trial court erred in sustaining St. Luke's motion for instructed verdict because the hospital failed to object to his res ipsa loquitur pleading, and there was evidence that such an injury does not occur where precautions are taken to avoid pres-

sure or trauma on the ulnar nerve while the patient is under anesthetics.

This point of error seems to argue that St. Luke's failure to specially except to appellant's allegation of res ipsa loquitur precluded the trial court from instructing a verdict on the hospital's behalf. As stated under the discussion of appellant's fourth point of error, the doctrine of res ipsa loquitur is inapplicable to the evidence in this case. We find no error in the granting of St. Luke's motion for instructed verdict.

Appellant's tenth ground of error is overruled.

Appellant's eleventh point of error alleges that the trial court abused its discretion, and erred in sustaining appellees' objections to plaintiff's exhibit no. 7, a photograph of the improper positioning of a patient's arm on the rail of a gurney, where the patient can sustain an ulnar nerve injury, the evidence being admissible because: (1) any objection can be waived by examination of the witness as to such picture without defense objections at the time; (2) the evidence was generally admissible to aid the jury in determining the matter of injury; (3) the evidence was improperly excluded since one picture is worth one thousand words; and (4) the trial court's exclusion of the evidence based on the objections made was a direct comment on the weight and sufficiency of the evidence which was calculated to be prejudicial to plaintiff.

Plaintiff's exhibit no. 7 is a photograph which sought to portray the manner in which a patient's arm "could" hang down in an area of a gurney, thereby exerting pressure on the ulnar nerve and causing an ulnar nerve injury. Neither Dr. Yelin nor any other witness testified that the photograph did in fact depict what appellant's counsel stated that it depicted, and there was no testimony to indicate that the occurrence depicted in exhibit no. 7 had befallen appellant. Dr. Yelin gave no testimony that the photograph was an accurate depiction of an event involving appellant, or that the photograph accurately depicted either the gurney, or the positioning of appellant's arm at any time during the neck surgery or the subsequent recovery room procedure.

The decision to admit or exclude photographic evidence is within the broad discretion of the trial judge. *City of Fort Worth v. Barlow*, 313 S.W.2d 906 (Tex.Civ.App.— Fort Worth 1958, writ ref'd n.r.e.). In order to be admissible in evidence, a photograph must portray facts relevant to an issue in the case, and first be verified by a witness as being a correct representation of such facts. *Fort Worth and D.C. Rwy. Co. v. Kiel*, 195 S.W.2d 405 (Tex.Civ.App.— Fort Worth 1946, writ ref'd n.r.e.).

■ There was no showing that appellant's proffered photograph accurately portrayed facts relevant to any issue in the present case, nor was it verified by a witness as being a correct representation of the facts of the case.

Appellant's eleventh point of error is overruled.

The judgment of the trial court is affirmed.

EVANS, C.J., dissents.

EVANS, Chief Justice, dissenting.

I agree with the holding of the majority that the trial court properly rendered a take-nothing judgment in favor of Dr. Yelin. There is no evidence to support a finding that Dr. Yelin was negligent during the surgical procedure or that he was charged with supervision of the appellant while he was recovering from the surgery and still under the influence of anesthesia. I also agree with the majority on its determination of the points of error dealing with the issue of informed consent.

I disagree with the majority's holding on the liability of St. Luke's Hospital, because there was some evidence that the hospital's personnel failed to exercise ordinary care while the appellant was unconscious in the recovery room.

It is undisputed that the trauma to appellant's ulnar nerve was caused by some external pressure to the elbow area of his

arm. Thus, the medical reason for his trauma was conclusively established.

It was also undisputed that the trauma "probably" had occurred in one of two ways: (1) while appellant was unconscious lying on a gurney (stretcher bed) in the recovery room, his arm could have fallen over the side of the gurney rail; or (2) after he regained consciousness in his hospital room, he could have placed his weight on his elbows while moving about in the hospital bed.

Dr. Yelin's testimony conclusively established that the hospital had the affirmative duty, when an unconscious patient was in the recovery room, to position the patient's arms so that undue pressure would not be applied to the ulnar nerve. Thus, to show the hospital had been negligent in that duty, the appellant was required to prove, by direct or circumstantial evidence, that the trauma had occurred while he was still in the recovery room.

In my opinion, the appellant met that burden. Both the appellant and his wife testified that he first noticed that his fingers were "asleep" (evidencing the trauma had already occurred) soon after he regained consciousness in his hospital room. Although that testimony was sharply contested, it was not conclusively refuted. Therefore, while the appellant's evidence was extremely weak, it was legally sufficient to raise a fact issue for the jury.

Contrary to the suggestion in the majority opinion, the appellant was not required to offer expert medical testimony to prove *when* the trauma probably occurred. That was not an issue requiring medical expertise, and it was a proper subject of circumstantial proof. *See Gulf Pipeline Co. v. Bailey,* 40 S.W.2d 938, 941 (Tex.Civ.App.— Texarkana 1931, writ dism'd); *Washington v. Missouri K. & T. Ry. Co. of Texas,* 90 Tex. 314, 38 S.W. 764 (1897).

Based on the testimony of appellant and his wife, a jury could reasonably have concluded that the trauma probably occurred while appellant was still in the recovery room under the influence of anesthesia. Although other evidence in the record might greatly preponderate against that conclusion, I feel the circumstantial proof is legally sufficient to support the submission of an issue to the jury. *See Washington v. Missouri K. & T. Ry. Co. of Texas,* 38 S.W. 764; *J. Weingarten, Inc. v. Obiedio,* 515 S.W.2d 308, 311 (Tex.Civ.App. —Houston [1st Dist.] 1974, writ ref'd n.r. e.).

I agree with the majority that the facts set forth in *Pekar v. St. Luke's Episcopal Hospital,* 570 S.W.2d 147 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.), are similar to those in this case. But there are several factual differences that explain why that holding is not applicable here.

In *Pekar,* there was expert testimony showing that the plaintiff's trauma probably resulted from causes not attributable to his hospitalization. Here, the medical testimony conclusively showed that appellant's ulnar nerve injury was caused by some external pressure to the arm during hospitalization. In *Pekar,* the theory of the plaintiff's case required some proof that the defendant hospital was guilty of an affirmative negligent act. Here, appellant was not required to prove an affirmative act, because it was conclusively shown that the hospital had an affirmative duty to prevent injury to an unconscious patient in the recovery room. Indeed, the appellant's theory of recovery was based not on an affirmative act, but on the hospital's negligent failure to perform that duty.

The appellant's circumstantial evidence, if believed by the jury, was legally sufficient to support a finding that appellant's injury occurred as a result of the hospital's negligence in the recovery room. Therefore, appellant was entitled to have an issue submitted on that question.

"[I]f a cause is shown that might produce an event and it being shown that an event of that particular character did occur, it may be inferred that the known possibility produced the result. Plaintiff is not required to exclude an appreciable chance that the event might have occurred in some other way. Expressed

otherwise, a conclusion of causal connection may be inferred by a balance of probabilities."

*Collier v. Hill & Hill Exterminators*, 322 S.W.2d 329, 337 (Tex.Civ.App.—Houston [1st Dist.] 1959, no writ).

In my opinion, the trial court erred in instructing a verdict in favor of St. Luke's Hospital, and I would reverse and sever that portion of the trial court's judgment and remand that cause for a new trial.