**James DUFF, Petitioner,**

v.

**Dr. Frank YELIN, et al., Respondents.**

**No. C–6095.**

Supreme Court of Texas.

May 11, 1988.

Rehearing Denied June 29, 1988.

John H. Holloway, Houston, for petitioner.

Kevin J. Keith, Bailey and Williams, Dallas, Randall E. Butler and V. Paige, Fulbright & Jaworski, Houston, for respondents.

ROBERTSON, Justice.

This is a medical malpractice action in which we must determine the propriety of an instructed verdict in favor of a hospital. James Duff brought suit against Dr. Frank Yelin and St. Luke's Episcopal Hospital in Houston, claiming, among other things, that the negligence of the defendants resulted in an injury to the ulnar nerve in his right arm. At the close of Duff's case, the trial court granted the hospital's request for an instructed verdict on all grounds. The trial court also granted an instructed verdict for Dr. Yelin on all grounds except informed consent. This matter, however, is not before us on appeal. The court of appeals, with one justice dissenting, affirmed that judgment. 721 S.W.2d 365. We affirm.

Duff was admitted to St. Luke's on November 7, 1977, complaining of pain in his left shoulder and arm. Three days later, on November 10th, Dr. Yelin operated on Duff. Hospital records indicated that on November 14th Duff complained of numbness and tingling in his right hand. After being discharged from St. Luke's on November 17th, Duff entered Houston's Methodist Hospital on December 5th to undergo elbow surgery by Dr. Yelin. Duff last saw Dr. Yelin on February 28, 1978.

Thereafter, Duff sued Dr. Yelin, J. Freeman, Dr. Mahmud Ali, and St. Luke's. Freeman is a student nurse and Ali is an anesthesiologist. Both of these parties were granted summary judgments and sev-

ered from this cause. Duff's pleadings claimed that the initial surgery on his neck and shoulder performed on November 10, 1977, was unnecessary, and that the defendants were negligent in failing to properly pad his arms in order to protect him from an injury to his ulnar nerve during surgery. Finally, Duff alleged that Dr. Yelin negligently performed the surgery of November 10th and that he failed to obtain Duff's informed consent.

During trial, Duff and his wife testified that Duff first complained of numbness in his right hand upon regaining consciousness on November 10th. On cross-examination, however, Duff conceded that he previously testified that he did not know when he first reported the tingling and numbness in his hand. Indeed, the hospital records showed that Duff did not complain about the discomfort until November 14th, four days after surgery.

In affirming the propriety of an instructed verdict, this court must find that there was no evidence presented which could have raised a fact issue concerning a fact proposition essential for the plaintiff's recovery. *Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 59 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). However, if there is any conflicting evidence of a probative nature, then the jury must pass on the issue. *Air Conditioning, Inc. v. Harrison–Wilson–Pearson*, 151 Tex. 635, 640, 253 S.W.2d 422, 425 (1952).

Inasmuch as this case involves allegations of medical malpractice, additional considerations come into play concerning our review of the evidence in light of the instructed verdict. In a medical malpractice case, the plaintiff must prove, by competent testimony, that the defendant's negligence proximately caused the plaintiff's injury. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 5, 219 S.W.2d 779, 782 (1949). Additionally, and of great importance in this case, the plaintiff must establish a causal connection beyond the point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury. *Lenger v. Physicians's Gen. Hosp., Inc.*,

455 S.W.2d 703, 706 (Tex.1970); *Hart*, 399 S.W.2d at 792. Applying these settled principles of law to the facts of this case, it is clear that the court of appeals correctly affirmed the instructed verdict in favor of St. Luke's.

■ Although Duff, during trial, presented portions of Dr. Ali's deposition, and did call Dr. Yelin as an adverse witness, he presented no independent expert medical testimony. Dr. Yelin repeatedly testified that there were two *possible* causes of Duff's ulnar nerve injury: (1) while Duff was unconscious, lying on a bed in the recovery room, his right arm could have fallen off the side of the bed and caused trauma to the ulnar nerve or (2) after regaining consciousness in his hospital room, Duff may have injured his elbow while moving around in his hospital bed. On numerous occasions, Dr. Yelin refused to state that either of these events could have caused Duff's injury within a reasonable medical probability. Although this court has held that it is not absolutely necessary that an expert couch his opinions in terms of a "reasonable medical probability," we still embrace the principle that a jury issue should not be submitted when it is based merely upon speculation and conjecture. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 331–32 (Tex.1968); *Insurance Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex.1966); PERDUE, THE LAW OF TEXAS MEDICAL MALPRACTICE § 7.03, at 281 (2d ed. 1985). After reviewing the testimony presented, we conclude that the only evidence presented to the jury, on the issue of proximate cause, was Dr. Yelin's testimony as to the two *possible* causes of Duff's injury; therefore, the trial court correctly granted an instructed verdict for St. Luke's. *Bowles*, 148 Tex. at 5, 219 S.W.2d at 785; *Pekar v. St. Luke's Episcopal Hospital*, 570 S.W.2d 147, 148 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

■ The dissent in the court of appeals asserted that there was some evidence that hospital personnel were negligent in handling Duff in the recovery room. We disagree. Although Dr. Yelin did state that it

was a "necessity" for the nurse to ensure proper positioning of Duff's arm so as to avoid undue pressure on the elbow, he also testified that based upon a reasonable medical probability, Duff's injury could have indeed occurred even if the nurses and all other hospital personnel had taken all the necessary precautions.

The dissent also seeks to distinguish *Pekar* by stating that the plaintiff's theory in that case rested upon the "defendant hospital [being] guilty of an affirmative negligent act," whereas the instant case did not require Duff to prove an affirmative act by St. Luke's. A closer reading of *Pekar*, however, clearly reveals that the plaintiff in that case charged that the defendants "negligently did or *failed to do some act*" which resulted in the plaintiff's injury. *Pekar*, 570 S.W.2d at 148 (emphasis added).

Finally, the dissent states that because it was undisputed that the injury to Duff's elbow was caused by some external pressure to the elbow area, the medical reason for the trauma was established. Although this statement is, by itself, correct, it ignores the principal reason behind this case going to trial—to affix liability upon the negligent party. Just because the jury knew that pressure to the elbow caused Duff's injury, this knowledge in no way enabled them to find out *how* this pressure was applied, and, more importantly, who was responsible for the event in the first place.

The court of appeals judgment is therefore affirmed.

MAUZY, J., dissents, joined by RAY and KILGARLIN, JJ.

MAUZY, Justice, dissenting.

I respectfully dissent. I disagree with the majority's holding that the trial court properly instructed a verdict in favor of St. Luke's Episcopal Hospital.

The standard of review for an instructed verdict requires a determination of whether the record contains any probative evidence that would raise a fact issue on material questions. *Collora v. Navarro*, 574 S.W. 2d 65, 68 (Tex.1978). Undeniably the mate-

rial question at issue in this case is proximate cause. In determining whether Duff sufficiently raised a fact issue on proximate cause, this court is obligated to consider all evidence in a light most favorable to Duff, disregard all conflicts and give Duff the benefit of all reasonable inferences. *Collora*, 574 S.W.2d at 68. If the record contains any probative evidence on proximate cause, the question is one for the jury to decide and the instructed verdict cannot stand. *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260, 262 (Tex. 1982); *Texas Employers Insurance Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex.1977).

In medical malpractice cases, the law requires proof of a causal connection between the injury and the defendant's negligence. *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703, 706 (Tex. 1970). In *Lenger*, this court identified the following circumstances under which the trier of fact may decide the issue of causation:

(1) when general experience and common sense will enable a layman fairly to determine the causal relationship between the event and the condition;

(2) when scientific principles, usually proved by expert testimony, establish a traceable chain of causation from the condition back to the event; and

(3) when probable causal relationship is shown by expert testimony. 455 S.W.2d at 706.

The court then explained that in determining whether an issue should be submitted to the jury, a reviewing court should not consider only evidence of one type to the exclusion of additional evidence falling into the other categories. *Id.* at 706.

This appears to be exactly what the majority has done in this case. The majority has concluded that Duff failed to produce any expert testimony of the probable cause of this injury. Although I disagree that the record is devoid of any expert testimony on the probable cause, I am not convinced that this case requires an expert's testimony to establish causation. The cases relied on by the majority do not support the proposition that in every case

medical expert testimony is the *only* means of proving causation.

In *Insurance Company of North America v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966), this court held that a scientific determination was necessary to support the contention that a preexisting tumor was activated and the deadly effects of a malignancy accelerated by an injury. Such a "question of science" could only be determined by expert medical testimony. *Id.* As noted in both *Lenger* and *Insurance Co. of North America v. Kneten*, 440 S.W.2d 52 (Tex.1969), expert testimony need only establish a *possible* causal relationship where the jury can fairly determine causation through general experience and common sense. *Lenger*, 455 S.W.2d at 706. *Kneten*, 440 S.W.2d at 53–54. *See also Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984) (lay testimony adequate to prove causation where general experience and common sense will enable a lay person to determine a causal relationship).

In the present case the evidence establishes that the injury to Duff's right ulnar nerve occurred while he was hospitalized for neck surgery. The surgery was completely unrelated to the ulnar nerve injury. The evidence supports two possible explanations: first, the injury could have occurred while Duff was anesthetized and being handled by hospital personnel; or second, he could have injured the nerve while moving about in his room after he awoke from the anesthetic.

In spite of the fact that Duff failed to produce his own expert, the testimony of the defendant Dr. Yelin placed the more probable time of injury while Duff was anesthetized and being handled by hospital personnel. Dr. Yelin testified:

Q: Would the man be more prone to injury to the ulnar nerve when he is under anesthetic than when he is awake?

A: He would because he would have no control. [S.F. 207].

Dr. Yelin later contradicted this statement by testifying that the probable cause of the injury was Duff's moving around his hospital room while awake. Nevertheless, in considering only the evidence that would support submission of the issue on causation, Dr. Yelin's testimony that Duff was more prone to injury while under anesthetic supports the contention that the injury probably occurred while Duff was being handled by hospital personnel.

Even if Dr. Yelin had successfully couched this testimony in terms of possibilities, the general knowledge and experience of a lay person could lead to the conclusion that the injury occurred while Duff was under anesthetic. In *Insurance Company of North America v. Kneten*, 440 S.W.2d 52 (Tex.1969), this court concluded that a jury could reasonably conclude that a claimant's heart attack was caused by a prior electrical shock. 440 S.W.2d at 53–54. The medical expert in *Kneten* concluded that the shock was only a possible cause of the heart attack. The court held that the jury could make the ultimate determination in light of the prompt onset of the attack following an event capable of precipitating it. *Id.*

I would therefore hold that in this case a jury *could* reasonably conclude through general experience and common sense that an ulnar nerve injury does not usually occur by an accidental bump, nor does leaning on an elbow generally cause permanent damage. Also there was sufficient expert testimony that the injury probably occurred while Duff was anesthetized and under the care of hospital personnel. Accordingly, the trial court improperly instructed a verdict in favor of the hospital. I would reverse the judgment of the court of appeals and remand the case to the trial court.

RAY and KILGARLIN, JJ., join in this dissent.