**Mark W. REED, Appellant,**

v.

**Jan REED, Appellee.**

No. 08–90–00189–CV.

Court of Appeals of Texas,
El Paso.

July 24, 1991.

James K. Read, El Paso, for appellant.

Don Studdard, Studdard & Melby, El Paso, for appellee.

Before OSBORNE, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In the final divorce decree, the trial court in its division of the community property divided three promissory notes between the parties ordering that the wife have "re-

course" on her husband. We modify and as modified, affirm.

Mark W. Reed (Mark), Appellant, and Jan Reed (Jan), Appellee, were married in 1979 and have two minor children. Jan brought suit for divorce in 1988. Mark had extensive business relationships with his father, Jerome Reed (Jerry), and brother-in-law, Shimshon Plotkin (Shim), in connection with several businesses and a shopping center. As a result of certain transactions, Mark and Jan had acquired three promissory notes as community property:

(1) Note dated January 1, 1990 in the principal amount of $32,750.00 at twelve percent interest, made by Shim and Reed's Photo Mart, Inc. payable to Mark on or before sixty days from date, given in recognition of a loan made by Mark and Jan to Reed's Photo Mart, Inc. in 1985.

(2) Note dated July 1, 1984 in the principal amount of $375,000.00, made by Shim payable to Mark and Jan with interest at seven and one-half percent from date, secured by a fourth deed of trust and security interest, given as consideration for the purchase of Mark's and Jan's ownership interest in Vista Del Plaza Shopping Center which had been developed by Mark and Shim under J.S.R. Properties, No. 2 joint venture.

(3) Note dated July 1, 1984 in the principal amount of $100,000.00, with interest at ten percent from date, made by Shim payable to Mark and Jan for their shares in Reed's Photo Mart, Inc. and Texas Teramar, Inc., secured by a security interest in the stock of the two companies.

At the conclusion of the trial, the court rendered its judgment dividing the community property between the parties. With respect to the three notes, the court awarded the following interests to Jan "with recourse on MARK W. REED": $23,875.00 together with interest from January 1, 1990, out of the $32,750.00 indebtedness; one-half of the $375,000.00 note together with interest from January 1, 1990; and one-half of the $100,000.00 note together with interest from January 1, 1990. The court made certain findings of fact and conclusions of law at the request of Mark, among which were the following:

10. MARK REED's family has total control over the security for the notes which impairs JAN REED's ability to receive her share of the property/security after divorce.

13. The security for the notes from Shimshon Plotkin and Reed's Photo Mart is within the constructive control of MARK W. REED.

In this appeal, Mark complains only of the "recourse" provision and to two findings in support thereof, not as to the basic division of property or as to any other orders in the decree. In his first two points of error, he asserts that the court erred by awarding portions of the three notes to Jan *with recourse* on him on the grounds that the provision amounts to an award of alimony and will likely result in the award of a disproportionate share of the community property, and in his third and fourth points, he maintains that there is no evidence to support the above findings which were intended to support the "recourse" provision.

 We will first consider Points of Error Nos. Three and Four, the evidentiary challenges to Findings 10 and 13. In reviewing a no evidence point, this Court must only consider the evidence and reasonable inferences drawn therefrom, which when viewed in their most favorable light, support the court's finding, disregarding all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex. 1986). If the finding is supported by more than a scintilla of evidence, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

 Accepting Jan's statement of the factual background as set forth in her brief

and as supported by the evidence, put in its best possible light, we are confronted with no direct or circumstantial evidence that Mark's family has total control over the security for the notes or that the security for the notes is within Mark's constructive control. All of the direct evidence is to the effect that Shim has mismanaged the businesses and allowed Reed's Photo Mart, Inc. to be put into involuntary bankruptcy, that Jerry has had to assume an active role to salvage what was left of a once profitable business and to stave off making good on his guaranty of a substantial Continental National Bank loan, and that Mark has lost what control he ever may have had over the course of events. Although the evidence indicated that Shim had been making regular monthly interest payments on the three notes but stopped making them approximately three to five months before the trial (which took place in December 1989), there is no evidence to show that the Reed family was engaging in a conspiracy to keep Jan from getting her share of the notes, or that Mark, at the time of trial, had any control over the security for the notes or over his brother-in-law, Shim.

In her testimony, Jan expresses her fears and concerns about how she is going to be guaranteed her "half of the money." She infers the conspiracy theory and Mark's control over the present situation from the stoppage by Shim of the superior shopping center mortgage payments and the interest payments on her and Mark's notes, the failure of Mark to get adequate security on the notes and indebtedness from Shim in 1984 and 1985, Mark's unilateral control of business matters as between him and her during their marriage ("[t]hey didn't tell me anything."), that Jerry in taking over the stores under the new name of Jerry Reed Inc., Reed's Photo Mart, Inc. being in bankruptcy, reneged on a previous indication, made prior to the bankruptcy while negotiating the take over, that he would honor the old company obligation on the $32,750.00 note, and that Jerry, as father, is in control of Mark, Shim and their various business ventures ("I really feel his father has a lot of control over all of this ..."). There is no rational connection between the sequence of events from 1984 to December 1989 and Jan's feelings on the one hand and facts inferred from them in Findings 10 and 13 on the other hand unless the fact finder can reasonably infer from those facts that Jerry, Mark and Shim were conspiring against her as far back as 1984 and that Mark has had "constructive control" over the security for the notes and particularly over Shim. Inferences cannot rest on speculation or other inferences. *Pekar v. St. Luke's Episcopal Hospital,* 570 S.W.2d 147, 150 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). In our conclusion that the findings are not supported by the evidence, we have not considered the abundant contrary evidence, such as, for example, the expressed ill-will that presently exists between Jerry, Mark and Shim, the expressed intention of Jerry not to assume and pay debts he had no part in creating and not to pay off the first lien indebtedness against Vista Del Plaza shopping center so that he can cut off the junior lienholders including the fourth lien held by Mark and Jan, and Jerry's testimony that running the stores and paying the banks is consuming virtually all of his income. Points of Error Nos. Three and Four are sustained.

◼ We next turn to the first point of error which challenges the "recourse" provision as amounting to a forbidden form of alimony. Under the facts of this case, that provision amounts to a court imposed guaranty on Mark's part that if, for any reason, the notes are not paid in whole or in part by the maker (Shim), Mark can be required to pay Jan an amount up to a total of $261,375.00 plus the unpaid accrued interest on that amount.

◼ Alimony which has been defined to include an allowance, whether periodical or in gross, judicially imposed on the husband to be made to the wife after a divorce has been entered, is impermissible under the statutes and public policy of Texas. *Price v. Price,* 591 S.W.2d 601, 603 (Tex. Civ.App.—Tyler 1979, no writ). Support payments ordered to be made after divorce to one spouse from the other spouse's community or separate property are not con-

sidered alimony in this state unless the order creates a personal obligation on the other spouse for the support of his or her former spouse. *Francis v. Francis,* 412 S.W.2d 29, 32–33 (Tex.1967). Where the obligation created by the judgment is personal, or in personam, rather than against existing property, or in rem, it is forbidden as a form of alimony. *Cordell v. Cordell,* 592 S.W.2d 84, 86 (Tex.Civ.App.—Texarkana 1979, no writ); *Benedict v. Benedict,* 542 S.W.2d 692, 699 (Tex.Civ.App.—Fort Worth 1976, writ dism'd).

The notes involved in this case are a form of personal property and as community property are subject to a division between the parties at the time of divorce just as is the case with any other item of such property. Sometimes classifed as *choses in action,* they differ from other property in the sense that they have no intrinsic value in and of themselves but have value based only on the promise or obligation of the maker to pay a certain sum of money at a certain time. While they were valued by the parties in their inventories at face value and found by the court to be of those values, being unsecured or undersecured and without guaranty by, or recourse on another responsible party, there was and is no certainty that they will be paid since their payment is largely dependent upon the ability of the maker to pay them at the given time. The trial court by adding the recourse provision created new rights not previously in existence. These recourse rights imposed on Mark made him an involuntary guarantor of the payment to Jan of up to $261,375.00 regardless of whether or not Shim pays anything on the notes.

We hold that the recourse provision created a personal obligation on Mark since it was not tied to the payment of the notes and therefore became an impermissible form of court imposed alimony. *Francis,* 412 S.W.2d at 33; *Benedict,* 542 S.W.2d at 699. Point of Error No. One is sustained.

We consider Point of Error No. Two only in passing with this observation. In the event that Shim does not pay the notes and Mark is then required to pay Jan her full share under the recourse provision, based on the values assigned in the inventories Jan will end up receiving over $339,000.00 in money and property and Mark will be left with a deficit of approximately $198,-500.00. This possible result would be so disproportionate and inequitable as to be neither just or right and as such, would constitute a clear abuse of discretion by the trial court. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981); Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1991). The second point of error is sustained.

Under the circumstances of this case, we reform the Final Decree of Divorce to delete the recourse provision and as thus reformed, we affirm the final decree in all other respects.