Alice **VILLEGAS**, and Margaret Villegas Individually and as Next Friend of Kiva Hewson, a Minor, Appellants,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 03–99–00146–CV.

Court of Appeals of Texas, Austin.

Dec. 16, 1999.

Rehearing Overruled Feb. 25, 2000.

Released for Publication Feb. 25, 2000.

Joe B. Stephens, Stephens & Stephens, Houston, for Appellants.

Brantley Ross Pringle, Jr., Wright & Greenhill, P.C., Austin, for Appellee.

Before Justices B.A. SMITH, YEAKEL and PATTERSON.

JAN P. PATTERSON, Justice.

Appellants Alice and Margaret Villegas, individually and as next friend of Kiva Hewson, a minor, sued appellee Nationwide Mutual Insurance Company ("Nationwide") for breach of contract. The jury found in favor of appellants and awarded substantial monetary damages, but the trial judge set aside the jury's verdict and rendered judgment that appellants take nothing.[1] We affirm the judgment n.o.v.

## BACKGROUND

In 1997, Keith Villegas and his wife Melissa purchased a personal automobile in-

surance policy from Nationwide to insure their two vehicles, a 1994 Mazda Protégé and a 1993 Ford Ranger truck. The policy took effect on June 13, 1997, and expired on December 13, 1997. The policy provided uninsured/underinsured motorist coverage whenever a "covered person" sustained bodily injuries in an accident. "Covered person" included the named insureds, Keith and Melissa; persons living in the same household as Keith and Melissa and related to them by blood, marriage, or adoption; and persons occupying the "covered auto." The policy defined "covered auto" as the Protégé and the Ranger, as well as "[a]ny auto ... you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of its normal use because of its: (a) breakdown; (b) repair; (c) servicing; (d) loss; or (e) destruction."

Beginning in May 1997, Keith and Melissa began experiencing engine and brake problems with the Protégé. They did not repair the vehicle; instead, they limited their use of the Protégé to shorts trips near their home in Round Rock and a twenty-mile round trip to and from work approximately once a week.

On July 12, 1997, Keith and Melissa drove their Ford Ranger from Round Rock to Alice Villegas's home in Austin. Alice is Keith, Sharon, and Margaret Villegas's mother. Margaret and her daughter, Kiva Hewson, were living with Alice at the time. The family planned to travel to New Braunfels for a birthday party. Upon arriving at Alice's home, Keith learned that Alice's Oldsmobile Cutlass was inoperable. Alice instructed Keith and his sister Sharon to rent a car to replace the Cutlass. Keith and Sharon went to a nearby Enterprise Rent A Car and rented a Nissan Maxima for three days. Sharon paid with a credit card bearing the name of Alice's business, A &

---

1. "[U]pon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence." Tex.R. Civ. P. 301.

P Bookkeeping, and listed Keith as an additional driver. Keith drove Melissa, Alice, Margaret, and Kiva to New Braunfels in the rented Maxima.

On the return trip to Austin, Keith collided with a car driven by Nita Crober. It is undisputed that Crober's negligence caused the accident. Alice, Margaret, and Kiva were rear-seat passengers at the time of the collision and were seriously injured.[2] Crober's automobile insurance policy was insufficient to fully compensate them for their injuries; thus, appellants sought underinsured motorist coverage[3] under Keith and Melissa's Nationwide policy as persons occupying a "covered auto."[4] Nationwide refused coverage and appellants sued for breach of contract.

At trial, the jury was asked whether, at the time of the collision, Keith and Melissa's Mazda Protégé was out of its normal use because of breakdown, repair, servicing, loss, or destruction. The jury answered affirmatively. The jury was then asked whether at the time of the collision, the rental car was being used as a temporary substitute for the Protégé. The jury again answered affirmatively and awarded Alice, Margaret, and Kiva $365,167.40, $511,810.81, and $15,844.00, respectively. Nationwide filed a motion to disregard jury findings and for judgment notwithstanding the verdict, arguing that there was no evidence to support the jury's findings that at the time of the accident (1) the Protégé was out of its normal use and (2) the rental car was used as a temporary substitute for the Protégé. The trial court

granted the motion and rendered a judgment n.o.v. in favor of Nationwide.

## DISCUSSION

A trial court may disregard a jury's findings and grant a motion for judgment n.o.v. only when there is no evidence to support one or more of the findings on issues necessary to liability. *See* Tex.R. Civ. P. 301; *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Oram v. State Farm Lloyds,* 977 S.W.2d 163, 166 (Tex.App.—Austin 1998, no pet.). In reviewing a "no evidence" question, we consider all the evidence in the light most favorable to the jury finding, indulging every reasonable inference in favor of the finding. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994). If there is more than a scintilla of competent evidence to support the jury finding, the judgment notwithstanding the verdict should be reversed. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). The evidence supporting the finding amounts to more than a scintilla if it supplies a reasonable basis for reasonable minds to reach differing conclusions as to the existence of the crucial fact. *See id.; Moriel,* 879 S.W.2d at 25; *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

The parties agree that pursuant to the uninsured/underinsured motorist provision of Keith and Melissa Villegas's personal auto insurance policy, the Maxima rental car can be considered a "covered auto"

---

**2.** Keith and Melissa were also injured in the collision but settled their claims with Nationwide before trial.

**3.** "The term 'underinsured motor vehicle' means an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's

policy." Tex. Ins.Code Ann. art. 5.06–1, § 2(b) (West Supp.1999).

**4.** Before trial, the parties stipulated that Alice, Margaret, and Kiva had received insurance payments from Crober's insurer totaling $32,-000 for bodily injuries caused by the accident. The parties also stipulated that Alice and Margaret had received $150,000 in uninsured/underinsured motorist benefits pursuant to automobile insurance policies issued by Trinity Insurance Company.

*only* if it was used as a temporary substitute for a "covered auto" that was out of normal use because of breakdown, repair, servicing, loss, or destruction. Trial testimony showed that the Villegas family planned to meet at Alice's home on July 12, 1997, and travel to New Braunfels in her Oldsmobile Cutlass; however, the day before the trip Alice's car broke down. Keith testified that he and Melissa drove to Alice's home in his Ford Ranger truck, and that he never expected to drive the family to the birthday party in his Protégé. Keith also testified that he did not realize a car needed to be rented until he arrived at Alice's home. Moreover, Keith testified that he did not sign the Enterprise rental agreement nor did he intend to drive the rented Maxima after the trip to New Braunfels. Finally, Keith testified that Alice planned on using the Maxima for the full three-day rental period because her Oldsmobile was inoperable.

The testimony of other Villegas family members bolsters the conclusion that the Maxima was rented to replace Alice's inoperable Oldsmobile, not Keith's unreliable Protégé. Sharon testified that when she arrived at Alice's house on the morning of July 12, Alice told her to rent a car to replace the Oldsmobile. Sharon also testified that she paid for the rented Maxima with a company credit card from Alice's business and that Keith did not sign the rental agreement. Moreover, Sharon testified that had the accident not occurred, Alice would have kept the Maxima for the full three days it was rented. Alice testified that she and Sharon had A & P Bookkeeping company credit cards.[5] Alice also testified that she gave Sharon permission to use the company card to pay for the rental car, and that the company credit card statements were delivered to the business address of A & P Bookkeeping.

■ Appellants contend that although Alice's Oldsmobile was inoperable on July 12, the need to rent a car arose only because Keith's Protégé was not dependable for long trips. Keith testified that when he arrived at Alice's home, he "found out that her car wasn't working and my car wasn't operating, so it was—the decision was made to go and rent one."[6] Keith also testified that under normal circumstances, the Villegas family would have traveled to the birthday party in the Protégé. Sharon testified that if anyone in the family had a vehicle that could have been driven to New Braunfels, that vehicle would have been used. Appellants argue that this testimony, in addition to testimony by Margaret and other family members that it was a Villegas family "custom" to use Keith's Protégé for family outings, provides sufficient evidence to support the jury's finding that the rented Maxima was a temporary substitute for Keith's Protégé.

■ To affirm the judgment of the trial court we must determine that there was no evidence of probative value upon which the jury could have made its findings. *See Andrews v. Houston Lighting & Power,* 820 S.W.2d 411, 413 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Rule 301 does not require " 'no evidence at all' but comprehends those situations in which the evidence is deemed legally insufficient to establish an asserted fact." *See id.;* Tex.R. Civ. P. 301. When the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or suspicion of its existence, the evidence is, in legal effect, no evidence. *See Andrews,* 820 S.W.2d at 413.

Although appellants offered testimony at trial that Keith and Melissa's Mazda Protégé was often used for family outings and would have been driven to New Braunfels had it been operating in a reliable manner,

---

5. Keith testified that he was employed by Texas Bone and Joint as a radiographer.

6. Trial testimony established that the interior of the Ford Ranger truck Keith and Melissa drove to Alice's home on July 12 was too small to seat five passengers.

this evidence does no more than raise mere surmise or suspicion that the Maxima was rented as a temporary substitute for the Protégé on July 12. *See Horton v. Horton,* 965 S.W.2d 78, 86 (Tex.App.— Fort Worth 1998, no pet.) (evidence that testator hallucinated at times was not evidence that he was incapacitated on the day the will was executed). No probative evidence was presented that would have allowed the jury to infer, without undue speculation and conjecture, that the Maxima was rented as a substitute for the Protégé that day.[7] *See First Interstate Bank v. S.B.F.I., Inc.,* 830 S.W.2d 239, 251 (Tex.App.—Dallas 1992, no writ); *see also Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex. 1988).

To the contrary, several members of the Villegas family, including Keith, testified that the family intended to travel to the birthday party in New Braunfels in Alice's Oldsmobile. On the day of the party, Keith and Melissa drove to Alice's home in their Ford Ranger, leaving the Protégé parked at their home in Round Rock. The testimony at trial also showed that Keith and Sharon went to Enterprise only after being instructed by Alice to rent a car to replace her Oldsmobile. Finally, the evidence established that Sharon rented the Maxima using a company credit card and that the Villegas family intended for Alice, not Keith, to drive the rental car from July 12 through July 15.

Viewing all the evidence in the light most favorable to the jury's findings, we conclude that there is no evidence that the Maxima was rented as a temporary substitute for Keith and Melissa Villegas's Mazda Protégé. Because appellants failed to carry their burden of proof on one of the issues necessary to liability, a directed verdict would have been proper at the conclusion of appellants' case. As a result, we

hold that the trial court did not err in granting the judgment n.o.v. and affirm the judgment of the trial court.

rented as a temporary substitute for Keith and Melissa's Protégé. Assuming Keith did reimburse Sharon, we fail to see how such a payment impacts the uncontradicted testimony that the Maxima was rented to replace Alice's Oldsmobile Cutlass.

7. Appellants also contend the jury heard testimony that, sometime after the accident, Keith reimbursed Sharon in cash for a portion of the rental car expense. Appellants argue that this testimony furnished a reasonable basis for the jury to conclude that the Maxima was