TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00477-CV






Martha Flores, Individually and as Next Friend of Alicia Flores, Teresa K. Knobles,

Consuelo Walker, Individually and as Representative of the Estate of Consuelo Flores,

and Manuel Flores, Appellants


v.


Daryl Eakin, M.D.; Lone Star Oncology Consultants, L.L.P.;

and Round Rock Hospital, Inc. d/b/a Round Rock Hospital, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. D-1-GN-00-002602, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellants, the surviving children of Consuelo Flores, sued appellees,
Dr. Daryl Eakin, M.D.; Lone Star Oncology Consultants, L.L.P.; and Round Rock Hospital, Inc.
d/b/a Round Rock Hospital, alleging that appellees' negligence proximately caused Flores's death. 
Appellees successfully moved to strike opinions of appellants' expert and subsequently obtained a
final summary judgment that appellants take nothing on their claims. In two issues, appellants
challenge two district court orders striking the expert opinions and the subsequent summary
judgment. (1) We will affirm the judgment of the district court.

 In March 1998, at age 75, Flores was diagnosed with rectal cancer. While still being
evaluated for treatment, in April 1998, Flores was also diagnosed with lung cancer. There is no
dispute that these two primary cancers were independent and unrelated. Flores underwent surgeries
to treat both cancers along with chemotherapy and radiation therapy. Flores saw Dr. Eakin, an
oncologist, as part of that treatment.

 On June 26, 1998, Flores, who had been experiencing nausea, vomiting, and diarrhea
for several days, was admitted to Round Rock Hospital. While in the hospital, she began running
a fever, and various medications were administered. She died in the hospital on July 4, 1998.

 Appellants sued Dr. Eakin; Dr. Eakin's practice group, Lone Star Oncology
Consultants, L.L.P.; and Round Rock Hospital, alleging negligence in the care and treatment of
Flores. Appellants hired Dr. Rhett K. Fredric as their expert witness. Appellees filed a joint motion
to strike Dr. Fredric's opinion testimony on the grounds that, among others, the testimony was
unsupported speculation and, therefore, unreliable. Specifically, appellees challenged the reliability
of Dr. Fredric's opinion that where a patient is afflicted with two cancers, the patient's probability
of surviving the cancers is determined by the survivability of the more serious of the two cancers
alone. (2) Additionally, Dr. Eakin filed a separate motion to strike certain opinions of Dr. Fredric
regarding whether Dr. Eakin's performance had been impaired by his alleged use of
pain medications.

 The district court granted Dr. Eakin's motion and, in part, appellees' joint motion,
including striking Dr. Fredric's opinions as to "the survivability of two cancers based on unreliability
and irrelevance." Appellees subsequently filed no-evidence motions for summary judgment, which
the district court granted. (3) This appeal ensued.

 In two issues, appellants contend that the district court abused its discretion by
striking Dr. Fredric's opinion testimony and, consequently, erred in granting final summary
judgment. We need only address the district court's order striking Dr. Fredric's opinions regarding
the survivability of Flores's two cancers, as it is decisive of both issues.

 To prevail on a medical-malpractice claim, a plaintiff must show (1) a legal duty,
(2) breach of that duty, and (3) damages proximately caused by that breach. IHS Cedars Treatment
Ctr. v. Mason, 143 S.W.3d 794, 798 (Tex. 2003). "Texas courts have long recognized the necessity
of expert testimony in medical-malpractice cases." American Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 876 (Tex. 2001).

 To establish proximate cause in a medical-malpractice claim, the plaintiff must show
by competent medical testimony that the negligence of one or more of the defendants proximately
caused his injuries. Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 399-400 (Tex. 1993); 
Duff v. Yelin, 751 S.W.2d 175, 176 (Tex. 1988). "The negligent act or omission [must be] shown
to be a substantial factor in bringing about the harm and without which the harm would not have
occurred." Kramer at 399-400 (citing Havner v. E-Z Mart, 825 S.W.2d 456, 459 (Tex. 1992)). 
To meet this burden, appellants were required to present legally sufficient evidence that Flores more
likely than not would have survived her two cancers; otherwise, any acts of appellees could not have
been a proximate cause of Flores's death. (4)

 Because Texas does not recognize the "lost chance" doctrine, there is no liability for
negligent medical treatment "that decreases a patient's chance of avoiding death or other
medical conditions in cases where the adverse result probably would have occurred anyway." 
Id. at 398. If the plaintiff had less than a 50 percent chance of survival absent the
defendant's negligence, the plaintiff's claim is barred. Id. at 400. "Hence, where preexisting
illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even
before the allegedly negligent conduct occurs--i.e., the patient would die or suffer impairment
anyway--the application of these traditional causation principles will totally bar recovery, even if
such negligence has deprived the patient of a chance of avoiding the harm." Id.

 In a medical-malpractice case, reasonable probability of survival is determined by the
substance and context of an expert's opinion. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 500 (Tex. 1995). The dispositive issue as to the appellants' claims is whether Flores probably
would have survived absent any negligence by appellees. To avoid summary judgment, appellants
had to present legally sufficient evidence that there was a 50 percent or greater chance that Flores
would have survived absent appellees' alleged negligence. To provide that evidence, appellants
relied solely on the testimony of Dr. Fredric.

 Dr. Fredric testified that Flores had a greater than 50 percent chance of survival of
her cancers because there was a 62 percent five-year survival rate for the lung cancer and a
70 percent five-year survival rate for the rectal cancer. He opined that the survival rates for a patient
with two primary cancers must be determined by looking solely to the survival rates for the most
serious cancer. He dismissed the notion that the presence of the second primary cancer would impact
the survivability of the first. According to Dr. Fredric's April 4, 2007, deposition testimony:


 Q. If [sic] have 62 percent chance of survival because of my lung cancer and
only a 70 percent chance of survival because of my rectal cancer, then doesn't
my chance of survival have to be something less than 62 percent, if you're
just applying a statistical analysis?


 A. No, I don't think so. And I'm not sure how to respond to that fairly. I've
never seen anybody that I'm aware of address that issue, so there may be
some - something you may have some knowledge of that I don't know.


 Q. Okay. Maybe addressed in the literature, but you have you haven't seen it?


 A. Yes - no sir, I haven't.


Later, in a supplemental affidavit dated May 1, 2007, Dr. Fredric averred:


 When a patient has two primary cancers, the patient's overall survivability is based
upon the individual cancers and their survivability. I am aware of no medical
literature that measures survivability of two separate primary cancers in any way
other than by addressing the survivability of individual cancers. While a patient with
two primary cancers may experience complications that patients with one cancer may
not, it does not follow that patients with two primary cancers will experience
different overall survival rates from the patients with a single cancer. I am aware of
no mathematical formula accepted by physicians that can be applied in this scenario. 
In other words, one may not simply multiply the probability of survival for the
two cancers to arrive at a new survival percentage. Such a calculation would lead to
the absurd result of a patient with one cancer with a zero percent five year survival
and one cancer with a one hundred percent five year survival having an overall
fifty percent chance of survival. Clearly, that is not the case.

 

 A trial court's decision to admit or exclude expert testimony is reviewed for abuse
of discretion. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001). "The test for abuse
of discretion is whether the trial court acted without reference to any guiding rules or principles." 
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). If a party opposes
and objects to the admission of expert testimony, the proponent bears the burden of demonstrating
its admissibility. Robinson, 923 S.W.2d at 557.

 Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is
relevant and based on a reliable foundation. Wilkins, 47 S.W.3d at 499; Robinson, 923 S.W.2d at
556. Scientific testimony is unreliable if it is not grounded "in the methods and procedures of
science," and amounts to no more than a "subjective belief or unsupported speculation." Robinson,
923 S.W.2d at 557 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993)). 
Expert testimony is also unreliable if "there is simply too great an analytical gap between the data
and the opinion proffered." Gammill v. Jack Williams Chevrolet, 972 S.W.2d 713, 727 (Tex. 1998)
(quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

 Factors used by courts to determine whether expert testimony is reliable include:


 1. the extent to which the theory has been or can be tested;

 

 2. the extent to which the technique relies upon the subjective interpretation of
the expert;

 3. whether the theory has been subjected to peer review and/or publication;

 

 4. the technique's potential rate of error;

 

 5. whether the underlying theory or technique has been generally accepted as
valid by the relevant scientific community; and

 

 6. the non-judicial uses which have been made of the theory or technique.


Robinson, 923 S.W.2d at 557. These factors are non-exclusive and flexible. Id.

 Here, Dr. Fredric offered no support for his opinion that the presence of two separate
primary cancers results in a prognosis identical to the individual prognosis of the more serious of the
two cancers. Dr. Fredric admitted, however, that "a patient with two primary cancers may
experience complications that patients with one cancer may not." Although Dr. Fredric reasoned that
the survival rates of the two cancers cannot simply be multiplied, he offered no support for this
assertion, just as he offered no support for his theory that the survival rates must be considered
separately. Without support from any scientific evidence or documentation, these opinions, without
more, require too great an analytical leap and amount to mere unsupported speculation. See
Gammill, 972 S.W.2d at 727. As it was appellants' burden, once challenged, to prove the evidence
reliable, see Robinson, 923 S.W.2d at 557, the district court acted within its discretion in striking
Dr. Fredric's causation testimony based on Dr. Fredric's "inability to testify on [Flores's]
survivability of the two cancers." See id. at 556-58. Accordingly, we overrule appellants' first issue.

 As for appellants' second issue, appellees filed a "no-evidence" summary judgment
challenging, among other elements of appellants' claims, causation. To avoid summary judgment,
appellants had the burden to present expert testimony on each challenged element. See IHS Cedars
Treatment Ctr., 143 S.W.3d at 798; Palacios, 46 S.W.3d at 876. Having held that the district court
acted within its discretion in striking Dr. Fredric's causation testimony as to survivability, we,
likewise, hold that the district court did not err in granting summary judgment against appellants on
no-evidence grounds. Accordingly, we overrule appellants' second issue.

 We affirm the judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed: August 22, 2008

1. The Honorable Darlene Byrne granted the two orders striking the expert opinions, while
the Honorable Margaret Cooper rendered the final summary judgment.
2. Appellees also challenged Dr. Fredric's reliance on the "Apache II" scoring method to
determine how the timing of administering antibiotics affects survivability of any one cancer. We
need not address this aspect of Dr. Fredric's testimony because the reliability of Dr. Fredric's
testimony as to the combined effect of two primary cancers is dispositive.
3. Eakin's motion also sought summary judgment on traditional grounds.
4. As appellants explained in their brief,


 Dr. Frederic's [sic] causation opinions are essentially that Ms. Flores' cancers were
survivable, her infection would have been survivable if antibiotic treatment had been
started promptly when Ms. Flores spiked a fever, and that Dr. Eakin's abuse of
prescription pain medication would affect his ability to pay necessary attention to
Ms. Flores' declining condition.