In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00276-CV**
_____


**LONNIE D. RODGERS SR., Appellant**

**V.**

**THE MEDICAL CENTER OF SOUTHEAST TEXAS, Appellee**

_____

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-193,734**
_____

**MEMORANDUM OPINION**

Seeking to overturn a jury's decision rejecting his claim that a nurse negligently injured his sciatic nerve by giving him an injection in his left hip, Lonnie D. Rodgers Sr. appeals from a take-nothing judgment, which the trial court rendered in favor of The Medical Center of Southeast Texas (The Medical Center). We conclude the evidence authorized the jury to reject Rodgers' allegation that a nurse,

1

employed by The Medical Center, gave Rodgers an injection in his left hip; therefore, we affirm the trial court's judgment.

## Background

On October 29, 2010, Rodgers sought treatment for a painful headache at an emergency room operated by The Medical Center. The emergency room doctor prescribed an injection of pain medicine. Subsequently, a nurse employed by The Medical Center (the nurse) gave Rodgers a shot that contained the medication that had been prescribed by the emergency room doctor.

One of the many disputed issues in the trial concerned whether the nurse gave Rodgers the injection in his right hip or in his left hip. Rodgers testified in his trial that the nurse gave him the injection in his left hip. Additionally, in their testimony, Rodgers' expert witnesses relied on Rodgers' account that the nurse gave Rodgers the injection in a muscle located on the back side of his left hip. According to Rodgers' experts, the nurse should have given Rodgers the injection in a muscle that lies more on the upper left or upper right side of the hip to avoid injuring his sciatic nerve.

Rodgers also claimed that the injection caused immediate pain in his left leg. He testified that when he got the injection, it felt like "a[n] electric bolt" going down his left leg all the way to his toes. During the trial, Rodgers testified that he still has pain in his low back and left leg, which causes him to limp. He attributed his ongoing

2

symptoms to the treatment that he received at the emergency room in October 2010, and the injection he was given by the nurse. Rodgers explained that eventually he saw a neurologist, who began treating him for the symptoms he was having in his low back and left leg. Rodgers testified that tests performed by the neurologist showed he had a sciatic nerve injury, and that the injury was causing pain in his lower back and left leg.

The accuracy of Rodgers' account of where on his body the nurse gave him the injection and his account regarding when his left leg symptoms started were disputed by other witnesses who testified in Rodgers' trial. The nurse who gave Rodgers the injection at the emergency room also testified in the trial. According to the nurse, he gave Rodgers the injection in the right upper quadrant of his right hip. Medical records that were created when Rodgers was treated were introduced during the trial. The medical records from The Medical Center show that the nurse wrote in Rodgers' records that he gave Rodgers the injection that was at issue in the "RDG." According to the nurse, "RDG" stands for the "[r]ight dorsal glute[,]" which is a muscle located in the rear part of a person's hip. A typed notation in The Medical Center's electronic medical records, created by the nurse in the course of charting the treatment Rodgers received in the emergency room, also references "RDG" as the injection site. The expert witnesses who were asked during the trial agreed that

an injection of pain medication in the right hip would not cause a sciatic nerve injury in a patient's left leg.

Testimony before the jury also contradicted Rodgers' claim that he had an adverse reaction to the shot while he was in the emergency room. According to the nurse, Rodgers was observed approximately thirty minutes in the emergency room to make sure that he did not have an adverse reaction to the injection. According to the nurse, Rodgers did not have an adverse reaction, and the medical records of Rodgers' October 2010 emergency room visit are consistent with the nurse's testimony.

In his petition, Rodgers alleged that The Medical Center and its nurse negligently injured his sciatic nerve by injecting pain medicine into his left hip. The jury, the entity asked to resolve the discrepancies that existed in the testimony that was introduced during Rodgers' trial, refused to find that The Medical Center[1] was negligent. The jury also refused to find that The Medical Center's nurse had caused Rodgers' alleged injury. In a broad-form charge, the jury was asked: "Did the negligence, if any, of The Medical Center of Southeast Texas proximately cause Lonnie D. Ro[d]gers, Sr.['s] injury?" The jury answered the issue "No." Relying on

---

[1] The nurse who gave Rodgers the injection was no longer a party to the suit when the case was tried.

4

this finding, the trial court rendered a take-nothing judgment in The Medical Center's favor.

Burden of Proof and Standard of Review

By its verdict, the jury determined that Rodgers failed to prove, by a preponderance of the evidence, that The Medical Center was negligent and that The Medical Center caused Rodgers' alleged sciatic nerve injury. In proving a medical malpractice claim, the plaintiff must prove (1) that the medical provider was under a duty to conform to a certain standard of care, (2) that the provider failed to conform to that required standard, (3) that the plaintiff was actually injured by the provider based on the provider's deviation from the standard of care that applies to the medical provider, and (4) that a causal connection exists between the medical provider's conduct and the plaintiff's injury. *See Methodist Hosp. v. German*, 369 S.W.3d 333, 338 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). With respect to causation, the plaintiff must prove, to a reasonable degree of medical probability, that the medical provider caused the plaintiff's alleged injury. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex. 1995); *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex. 1988). Proving causation requires proof that the medical provider's negligent acts or omissions were "a substantial factor in bringing about the harm and without which the harm would not have occurred." *Park Place Hosp.,* 909 S.W.2d

5

at 511 (quoting *Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 400 (Tex. 1993)).

In his appeal, Rodgers argues that the jury's verdict for The Medical Center is against the greater weight and preponderance of the evidence and that it is manifestly unjust. As the plaintiff, Rodgers had the burden to prove his claims, and he must demonstrate that the jury's "No" finding is "against the great weight and preponderance of the evidence" to overturn the verdict on appeal. *City of Keller v. Wilson,* 168 S.W.3d 802, 826 (Tex. 2005) (internal citations omitted); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). Generally, evidence is sufficient to support a jury's finding on an issue if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller,* 168 S.W.3d at 827. Generally, in the absence of conclusive evidence proving that an injury occurred, a jury is allowed to determine which of the witnesses who testified in a trial gave reliable and credible testimony regarding the circumstances that led to an alleged injury. *See City of Keller,* 168 S.W.3d at 819.

In reviewing a jury's verdict, we are required to defer to the jury's decision regarding the weight the jury gave to the evidence that was presented during a trial. *Id.* In a trial, the jurors have the right to choose to believe one witness over others, and to reach a verdict by deciding that some witnesses were credible and that others were not in the course of deciding who should prevail. *See McGalliard v. Kuhlmann,*

6

722 S.W.2d 694, 697 (Tex. 1986). With respect to the testimony of a parties' experts, "[e]ven uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone." *City of Keller*, 168 S.W.3d at 820. Nonetheless, jury verdicts are not incapable of being overturned on appeal if the evidence from the trial shows that the jury ignored "undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted" in reaching a verdict. *Id*. However, absent a record from the trial showing that the decision the jury made contradicts the overwhelming great weight and preponderance of the evidence, we are not allowed to merely substitute our judgment for the jury's. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex. 1998).

Analysis

In a single appellate issue, Rodgers argues that the greater weight and preponderance of the evidence demonstrated that a nurse employed by The Medical Center caused him to suffer a sciatic nerve injury in his left leg on October 29, 2010, when he received an injection in his left hip. According to Rodgers, there was no dispute in the trial over whether he has a sciatic nerve injury that is causing symptoms in his low back and left leg. In his appeal, Rodgers argues that the overwhelming weight of the evidence shows that the nurse gave him the injection in an improper location based upon the standard of care that applies to nurses.

While the record does contain evidence that might have supported a verdict in Rodgers' favor, the evidence that was before the jury in the trial reflects that a bona fide dispute existed about which hip the nurse used when he gave Rodgers the injection. The opinions that Rodgers' experts offered on causation and negligence are all premised on the assumption that Rodgers was given the injection into his left hip. However, given the nurse's testimony and medical records, the jury was authorized to conclude that Rodgers was given the injection in his right hip, and that an injection on that side would not have caused any symptoms or injury to Rodgers' left leg.

The evidence also authorized the jury to conclude that Rodgers' complaints about the symptoms he was having on the left side of his low back and left leg resulted from conditions that existed before he was treated at the emergency room. Evidence before the jury in Rodgers' trial showed that Rodgers had complained about symptoms in his back and left leg to another doctor two days before the date that he was seen in the emergency room.

There was also conflicting expert witness testimony on negligence and causation, allowing the jury to decide which experts it wanted to believe. A neurologist called by The Medical Center testified that Rodgers, in his opinion, did not suffer a sciatic nerve injury from the injection he received in the emergency room. According to the neurologist, the standard of care that applies to nurses allows

8

a nurse to give a patient an injection into the upper right or left quadrant of the dorsogluteal muscle of the hip. As the factfinder, the jury was authorized to credit the nurse's testimony, and to credit the medical records, both of which show that Rodgers was given the injection in his right hip. In our opinion, the jury's verdict was reasonable in light of the authority given juries to resolve inconsistencies that exist in the testimony admitted during a trial.

Having carefully reviewed the evidence that was before the jury in Rodgers' trial, we conclude that the jury's determination that the nurse was not negligent and did not cause Rodgers' alleged sciatic nerve injury was reasonable given the evidence presented to it during the trial. *See City of Keller*, 168 S.W.3d at 819. We overrule Rodgers' issue, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice


Submitted on September 11, 2017
Opinion Delivered November 16, 2017

Before McKeithen, C.J., Horton and Johnson, JJ.

9